UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| HV ASSOCIATES LLC and HARSHI VASHISHT | Civil Action No. 17-8128 (SRC) |
| Plaintiffs, | |
| v. | OPINION & ORDER |
| PNC BANK, N.A. and ROYAL BANK OF CANADA | |
| Defendants. | |

**CHESLER**, District Judge

This matter comes before the Court upon the filing by Defendant PNC Bank, National Association ("PNC") of a motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket No. 20. Plaintiff HV Associates LLC ("HVA") and Plaintiff Harshi Vashisht ("Harshi," collectively "Plaintiffs") oppose this motion (Docket No. 21), and PNC has filed a reply brief (Docket No. 22). The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, PNC's motion will be granted in part and denied in part.

I.     **FACTUAL BACKGROUND**[1]

Plaintiff HVA is a staffing services company owned by Plaintiff Harshi and located in Hoboken, New Jersey. Harshi's husband was formerly an executive for Defendant Royal Bank

---

[1] The following summary is largely based on factual allegations contained in the Amended Complaint ("Am. Compl.," Docket No. 16). For the purposes of this motion, the Court assumes the truth of these factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

1

of Canada ("RBC"). In March 2012, RBC began an internal investigation of HVA as well as of Techno-Comp, Inc. ("TCI"), a staffing vendor of RBC owned by non-party Sanjay and/or Sashi Gundala. The investigation regarded kickbacks that TCI had allegedly paid HVA in exchange for Harshi's husband exploiting his executive position at RBC to ensure that the bank used TCI contractors. In an April 2012 letter, RBC invoked its rights under the vendor contract to request an audit of TCI's financial transactions, to which TCI responded by terminating the staffing contract.

In June 2012, RBC sent Plaintiffs and TCI a "Draft Complaint"—which RBC did not subsequently file in court—in which RBC alleged that Plaintiffs had received fraudulent kickbacks from TCI, in violation of various state laws and contractual obligations. In the Draft Complaint, RBC stated that "bank alert resources" had revealed that TCI issued thirteen checks payable to HVA for $20,000 each, which were deposited into HVA's business account at PNC and subsequently used to pay for Harshi's personal expenses. Am. Compl. ¶ 33. Plaintiffs do not have bank accounts at RBC, although Harshi and her husband have personal bank accounts with PNC and HVA has the aforementioned business account there. Plaintiffs allege that the "only way RBC would have known [about the TCI-HVA checks and HVA-Harshi transactions] is if PNC shared private banking information with RBC." Am. Compl. ¶ 34. Around this time, PNC's parent company acquired the American retail business of RBC, and Plaintiffs allege that Defendants employed this "significant business relationship" to "collude[] . . . to retrieve private and confidential banking information." Am. Compl. ¶ 14. Sometime after Plaintiffs received this Draft Complaint, PNC closed Harshi's personal bank accounts and HVA's business account.

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint in the Superior Court of New Jersey in September 2017, listing PNC Financial Services Group ("PNC Financial") as the sole defendant. PNC Financial removed the action to this Court in October 2017. Docket No. 1. Subsequent to a Rule 16 Scheduling Conference before Judge Waldor, Plaintiffs filed the Amended Complaint, which substituted PNC Financial with PNC, and joined RBC as Defendant.

The Amended Complaint asserts several causes of action against PNC for: violation of New Jersey privacy laws under the New Jersey Electronic Fund Transfer Privacy Act (Count I), common law invasion of privacy (Count II), breach of contract (Count III), tortious interference with contract and prospective economic advantage (Count IV), defamation and defamation per se (Count V), trade libel (Count VI), and intentional and/or negligent infliction of emotional distress (Count VII).

## III. LEGAL STANDARD

### a. Motion to Dismiss Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule 8 pleading standard does not require "detailed factual allegations," but it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. (quoting Twombly, 550 U.S. at 556). Allegations that are "merely consistent with a defendant's liability or show the mere possibility of misconduct" do not satisfy the facial plausibility requirement. Santiago v. Warminster Twp., 629 F.3d 121, 133 (3d Cir. 2010). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 550 U.S. at 679).

Courts in the Third Circuit conduct a two-part analysis when presented with a motion to dismiss under Rule 12(b)(6). "First, the factual and legal elements of a claim should be separated." Fowler, 578 F.3d at 210. Courts are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable" to the nonmoving party. Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (internal citations omitted). While factual allegations must be accepted as true, courts should "not credit either 'bald assertions' or 'legal conclusions' in a complaint." Id. at 177; see also James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (in deciding Rule 12(b)(6) motions, federal courts should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements"). To conduct this assessment, courts may consider allegations in the complaint, documents attached thereto or specifically referenced therein, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). Once the factual and legal elements have been separated, courts in the Third Circuit "then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 210–11.

## IV. DISCUSSION

### a. Plaintiffs Have Not Pleaded a Valid Claim Against PNC under the New Jersey Electronic Fund Transfer Privacy Act

Plaintiffs allege that "PNC, without notifying Plaintiffs, provided RBC with private and confidential banking information belonging to Plaintiffs." Am. Compl. ¶ 16. RBC allegedly otherwise lacked access to these banking records because neither HVA nor Harshi banked with RBC, and TCI had terminated its vendor relationship with RBC after it refused RBC's audit request under the terms of the vendor contract. Am. Compl. ¶¶ 12-13. Plaintiffs further allege that PNC and RBC shared this confidential banking information through "bank alerts," which are suspicious activity reports filed with the Financial Crimes Enforcement Network ("FinCEN") pursuant to the U.S. Bank Secrecy Act ("BSA"). Am. Compl. ¶ 17.

At the time RBC sent Plaintiffs the Draft Complaint, HVA had a business checking account and Harshi and her husband had personal bank accounts with PNC. See Docket No. 20, Exs. A-C (the "Business Account" between PNC and HVA); Docket No. 20, Exs. D-E (the "Personal Account" between PNC and Harshi and her husband). Plaintiffs do not allege, either affirmatively or indirectly through the evidence cited, that PNC shared banking information with RBC related to transactions in the Personal Account. Instead, Plaintiffs cite two paragraphs from RBC's 2012 Draft Complaint in support of their allegation that PNC improperly shared banking information related to HVA's Business Account:

> 23. Information obtained in RBC's investigation from bank alert resources … revealed that during the course of TCI's relationship with RBC, TCI had been making regular payments to a company named HVA. RBC received information that from August 2011 through March 2012, TCI issued thirteen (13) checks payable to HVA for $20,000 each. These checks … were deposited into HVA's bank account at PNC.

5

> 29. The illegal funds deposited into the HVA account [at PNC] were for the mutual benefit of … Harshi [and her husband] and were used, in part, to pay [their] personal expenses. For example, on August 30, 2011 Harshi wrote a check from the HVA checking account to pay down [her husband's] line of credit, and on January 18, 2012, Harshi wrote a check from the HVA checking account to pay … [her husband's] Visa credit card. Am. Compl. ¶ 33.

As the first cause of action, Plaintiffs allege that PNC's sharing of this banking information violates the New Jersey Electronic Fund Transfer Privacy Act (the "Privacy Act"). N.J. Stat. Ann. § 17:16K et seq. The Privacy Act outlines the permissible circumstances, under New Jersey law, in which financial institutions and government agencies may disclose private banking account information with third parties. See N.J. Stat. Ann. § 17:16K-3. Critical to the motion at bar, the Privacy Act regulates 'accounts' that are "demand, time, or savings deposit, or other consumer asset account[s], other than an occasional or incidental credit balance, held either directly or indirectly by a financial institution and established for personal, family or household purposes." N.J. Stat. Ann. § 17:16K-2(b) (emphasis added).

In its capacity as a limited liability company, HVA executed an "Account Agreement for Business Accounts" with PNC in February 2008. Docket No. 20, Ex. B. By its terms, the Business Account does not qualify under the Privacy Act as a "consumer asset account . . . established for personal, family or household purposes." The HVA Business Account does not convert into a consumer account subject to the Privacy Act merely because Harshi or her husband allegedly used funds from the HVA Business Account for personal expenses. The Business Account likewise does not constitute a consumer account by virtue of Plaintiffs' conclusory assertion that "all of [the PNC accounts] were established for personal, family, and/or household purposes." See Am. Compl ¶ 26.

The only factual allegations that connect PNC to Harshi's Personal Account regard the "permanent emotional injury" caused when "PNC, without notice to its customers, closed Plaintiffs' . . . personal checking and savings accounts." Am. Compl. ¶¶ 26-28. Since this account closure does not concern the disclosure of private banking information to third parties, these allegations likewise fail to state a claim with facial plausibility under the Privacy Act. See N.J. Stat. Ann. § 17:16K-3. As such, this Court grants Defendant's motion to dismiss Plaintiffs' first cause of action for violations of the Privacy Act.

### b. Plaintiffs Have Pleaded a Valid Claim Against PNC for Common Law Invasion of Privacy

#### i. Plaintiffs Have Pleaded, with Facial Plausibility, that PNC Publicly Disclosed Private Facts to RBC

Under New Jersey law, common law invasion of privacy comprises four distinct torts: intrusion; placing a plaintiff in a false light in the public eye; appropriation of a plaintiff's name or likeness for defendant's benefit; and the public disclosure of private facts. Rolax v. Whitman, 175 F. Supp. 2d 720, 726 (D.N.J. 2001), aff'd, 53 F. App'x 635 (3d Cir. 2002) (quoting Rumbauskas v. Cantor, 138 N.J. 173, 180 (N.J. 1994)). To establish a claim for the public disclosure of private facts, Plaintiffs must demonstrate "(1) that private matters were revealed; (2) that dissemination of such facts would be highly offensive to a reasonable person; and (3) that there is no legitimate public interest in the disclosure." W.P. v. Princeton Univ., 2016 WL 7493965, at *2 (D.N.J. Dec. 30, 2016); see also Romaine v. Kallinger, 109 N.J. 282, 297 (N.J. 1988). Because Plaintiffs have alleged sufficient facts, which when accepted as true demonstrate a plausible entitlement to relief for the public disclosure of private facts, this Court denies Defendant's motion to dismiss Count II of the Amended Complaint.

Under New Jersey law, individuals have a protected interest in their private banking records. State v. McAllister, 184 N.J. 17, 29 (N.J. 2005) ("[A]rticle I, paragraph 7 of the New Jersey Constitution recognizes a citizen's reasonable expectation of privacy in his or her bank records, even when those records are in the possession of the bank."). Plaintiffs plead specific facts to plausibly establish that their private banking records were disclosed to RBC. See Am. Compl. ¶ 33 (identifying private records related to TCI's issuance of 13 checks worth $20,000 each deposited into HVA's business account at PNC, and identifying specific instances and dates when Harshi wrote checks from HVA's business account at PNC to pay for certain personal expenses).

Plaintiffs further establish, with facial plausibility, that it was PNC who revealed this information to RBC. In its motion, Defendant claims that there is "not one scintilla of evidence" to establish that PNC revealed these banking records to RBC, as the Draft Complaint does not state that RBC received the information from PNC. Docket No. 20, 11. Further, Defendant contends that RBC could have received this information from alternative sources, such as TCI and Gundala, TCI's bank, an RBC Visa card, or another financial institution. Docket No. 20, 11-12. Unlike other potential sources, however, PNC was privy to both types of bank records (the TCI-HVA checks and the HVA-Harshi payments). Further, Plaintiffs allege a plausible mechanism by which Defendants could share such information, through the SAR reports filed with FinCEN pursuant to the BSA. Plaintiffs also allege that this information sharing was facilitated by the "significant business relationship" between Defendants created through the then-recent acquisition by PNC's parent company of the American retail business of RBC. Am. Compl. ¶ 14. Together, these factual allegations render it plausible that PNC revealed these records to RBC. Since the facial plausibility requirement under Rule 8 "is not akin to a

probability requirement" (see Iqbal, 556 U.S. at 678), such factual allegations suffice to withstand Defendant's motion to dismiss.

> ii. This Court will Not Dismiss Plaintiffs' Claim for Invasion of Privacy Under the BSA Safe Harbor Provision

Under Section 314(b) of the BSA, financial institutions may "transmit, receive, or otherwise share information with any other financial institution" to identify and report activities that the institutions suspect "may involve possible terrorist activity or money laundering." See 31 C.F.R. § 1010.540. The BSA includes a statutory safe harbor that protects financial institutions from civil liability provided that they comply with certain requirements, including the "notice," "verification," and "use and security of information" requirements in subsections (b)(2)-(4). See 31 C.F.R. § 1010.540(b)(5)(ii) (the safe harbor "shall not apply . . . to the extent such institution or association fails to comply with paragraphs (b)(2), (b)(3), or (b)(4)"). To qualify for the safe harbor, the shared information must concern "[i]dentifying and, where appropriate, reporting on money laundering or terrorist activities." 31 C.F.R. § 1010.540(b)(4)(i)(A); see also FinCEN Ruling, FIN-2012-R006, Administrative Ruling Regarding the Participation of Associations of Financial Institutions in the 314(b) Program, July 25, 2012, at 3 ("To reiterate, information shared for the purposes of identifying fraud or other specified unlawful activity that is not related to a transaction involving the possibility of money laundering and/or terrorist financing is not covered by the statutory safe harbor.").

Defendant argues that the safe harbor provision is an affirmative defense that "cloaks PNC with immunity from civil liability for sharing information regarding potentially suspicious activities with other financial institutions." Docket No. 20, 17. Conversely, Plaintiffs argue that this safe harbor provision does not apply because PNC "knew or should have known that neither Harshi nor HVA were engaged in terrorist activities or money laundering," because PNC did not

9

submit the requisite written notice to FinCEN before sharing the information, and because PNC did not verify that RBC had complied with this notice requirement. Am. Compl. ¶ 40.

Because the BSA safe harbor constitutes an affirmative defense inappropriate for resolution under a Rule 12(b)(6) motion, this Court does not need to determine whether PNC's conduct qualifies for the safe harbor. Under Third Circuit law, an affirmative defense—such as the safe harbor provision—may serve as grounds for dismissing a claim under Rule 12(b)(6) "*only* if the basis for the defense is evident on the face of the complaint." Brody v. Hankin, 145 F. App'x 768, 771 (3d Cir. 2005)(emphasis in original). Such a basis is facially established where "plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." R.K. v. Y.A.L.E. Sch., Inc., 2009 WL 1066125, at *3 (D.N.J. Apr. 20, 2009). Where the defense is not apparent on the face of the complaint, however, the district court "instead should (1) deny the motion without prejudice to renew in the form of a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or (2) convert the Rule 12(b)(6) motion into a Rule 56 motion pursuant to Fed.R.Civ.P. 12(d)." Kisby Lees Mech. LLC v. Pinnacle Insulation, Inc., 2012 WL 3133681, at *4 (D.N.J. July 31, 2012) (quoting Rycoline Prod., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)). Plaintiffs' allegations do not indicate that the safe harbor applies; rather, Plaintiffs allege several reasons why it is inapplicable. Accordingly, this Court denies without prejudice Defendant's motion to dismiss under this affirmative defense, and further grants Defendant leave to renew its affirmative defense in a motion for summary judgment on the basis of record evidence.

   iii. <u>This Court will Not Dismiss Plaintiffs' Claim for Invasion of Privacy Under the Economic Loss Doctrine or the Statute of Limitations</u>

In its motion, Defendant argues that "Plaintiffs' common law tort claims are barred by the economic loss rule," since the "harm allegedly caused arises from the contractual relationship

10

between Plaintiffs and PNC, not any independent duty that PNC Bank allegedly owed to Plaintiffs." Docket No. 20, 23-24. Under New Jersey law, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract," however "a tort claim can be asserted alongside a breach of contract claim . . . [if] the tortious conduct is extrinsic to the contract between the parties." State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 676 (D.N.J. 2009). With respect to the invasion of privacy claim, the alleged tortious conduct—PNC's unauthorized disclosure of private bank records to RBC—is extrinsic to the Business and Personal Account contracts signed between PNC and Plaintiffs. Defendant cites no Third Circuit case law that has decided otherwise. Accordingly, this Court will not dismiss, under Rule 12(b)(6), Plaintiffs' invasion of privacy claim under the economic loss doctrine.

Defendant also argues that "Plaintiffs' tort law claims . . . are barred by the two-year statute of limitations set forth in N.J.S.A. 2A:4-2." Docket No. 20, 24. Plaintiffs did not address this issue in their reply brief. Under New Jersey law, certain invasion of privacy torts such as appropriation are governed by a six-year statute of limitations under N.J. Stat. Ann. § 2A:14-1, while other invasion of privacy torts like intrusion on seclusion are governed by a two-year statute of limitations under N.J. Stat. Ann. § 2A:14-2. See Rumbauskas v. Cantor, 138 N.J. 173, 175 (N.J. 1994). The New Jersey Supreme Court has not yet determined which limitations applies to the privacy tort of public disclosure of private facts. Smith v. Datla, 451 N.J. Super. 82, 91 (N.J. App. Div. 2017) ("New Jersey courts have not established a statute of limitations for the public disclosure of private facts"); Rumbauskas, 138 N.J. at 183 (declining to determine this issue, as "limitation periods applicable to actions involving other types of invasion of privacy are not before us"). Further, in the Third Circuit, "if the [statute of limitations] bar is not apparent on

the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). As such, this Court declines to dismiss, under Rule 12(b)(6), Plaintiffs' count for common law invasion of privacy as time-barred by the two-year limitations in N.J. Stat. Ann. § 2A:14-2.

### c. Plaintiffs' Other Causes of Action Do Not State a Valid Claim Against PNC Upon Which Relief May Be Granted

In the Amended Complaint, Plaintiffs plead five other causes of action against PNC: breach of contract (Count III), tortious interference with contract and prospective economic advantage (Count IV), defamation and defamation per se (Count V), trade libel (Count VI), and the intentional and/or negligent infliction of emotional distress (Count VII). In evaluating Defendant's motion to dismiss, this Court must first separate the factual and legal elements before determining whether the alleged facts suffice to show a plausible claim for relief. See Fowler, 578 F.3d at 210–11. Since the remaining five causes of action do not plead sufficient facts to demonstrate the plausible entitlement to relief, this Court grants Defendant's motion to dismiss Counts III through VIII against it.

#### i. Breach of Contract (Count III)

In the Amended Complaint, Plaintiffs allege that the "aforesaid conduct of PNC, without notice to Plaintiffs, constitutes, inter alia, PNC's breaches of various contracts and/or agreements with Plaintiffs concerning their various bank accounts at PNC." Am. Compl. ¶ 60. There are four elements to state a valid claim for breach of contract under New Jersey law: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

With respect to the breach of contract element, Plaintiffs factually allege that PNC closed these accounts "without notice" and that "some of those Accounts . . . [were] opened over fifteen (15) years earlier, and all ha[d] more than sufficient amounts of money on deposit and no suspicious activities." Am. Compl. ¶ 26. Neither the Amended Complaint nor the operative contracts for the Business and Personal Accounts indicate why the Accounts' opening date, account balance, or lack of suspicious activities have any bearing on PNC's alleged breach of contract. See Docket No. 20, Exs. A-E. Instead, these facts appear irrelevant and accordingly cannot substantiate Plaintiffs' entitlement to relief for breach of contract. With respect to the prior notice given, only the Personal Account requires prior notice and PNC appears to have complied with this requirement by providing written notice on September 27, 2012. Comp. Docket No. 20, Exs. A and D; Docket No. 20, Ex. F. Plaintiffs have not pleaded sufficient facts to plausibly demonstrate how PNC breached the operative contracts. As such, this Court grants Defendant's motion to dismiss the breach of contract claim under Rule 12(b)(6).

### ii. Tortious Interference with Contract and Prospective Economic Advantage (Count IV)

For the tortious interference claim, Plaintiffs allege that "PNC interfered with HVA's contractual relationships and/or with its prospective economic advantage with such companies as Credit Suisse, Marsh & McLennan, Deloitte Consulting and HCL Technologies" and that PNC "interfered, and will continue to interfere, with, inter alia, Harshi's employability in a regulatory position and other jobs in the banking industry." Am. Compl. ¶¶ 64-65. To state a valid claim for tortious interference under New Jersey law, Plaintiffs must establish "(1) a reasonable expectation of economic advantage to plaintiff; (2) interference done intentionally and with malice; (3) causal connection between the interference and the loss of prospective gain; and (4) actual damages." Luttmann v. Tiffany & Co., 2009 WL 197520, at *2 (D.N.J. Jan. 26, 2009)

13

(quoting Varrallo v. Hammond Inc., 94 F.3d 842, 848 (3d Cir. 1996)). Plaintiffs allege no facts in support of the second, third or fourth elements, but instead rely on legal conclusions that cannot form the basis for stating a plausible claim to relief. See, e.g., Am. Compl. ¶ 67 ("Defendants' aforesaid conduct was willful, wanton, malicious and in reckless disregard of Harshi's rights"); Am. Compl. ¶ 66 ("As a direct and proximate result thereof, Plaintiffs have suffered damages"). As such, this Court grants Defendant's motion to dismiss the tortious interference cause of action under Rule 12(b)(6).

### iii. Defamation and Defamation Per Se (Count V)

With respect to PNC's conduct for the defamation and defamation per se cause of action, Plaintiffs allege that "[b]y improperly sharing private and confidential banking information through 'bank alerts,' and based upon a faulty investigation, RBC and PNC enabled rumors to circulate concerning, among others, HVA and Harshi, that were demonstrably false." Am. Compl. ¶ 69. Under New Jersey law, a valid claim for defamation requires the plaintiff to establish (1) that the defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to persons other than the plaintiff; and (5) fault. Paul v. United Parcel Serv., 2005 WL 3307268, at *2 (D.N.J. Dec. 6, 2005) (quoting Taj Mahal Travel, Inc. v. Delta Airlines Inc., 164 F.3d 186, 189 (3d Cir. 1998)). The Amended Complaint does not contain sufficient factual allegations that PNC made false, defamatory statements regarding Plaintiffs. Instead, Plaintiffs impermissibly rely on legal conclusions. See, e.g., Am. Compl. ¶ 73 ("This publicly filed, false and defamatory information"); Am. Compl. ¶ 74 ("HVA and Harshi have suffered, and will continue to suffer, among other things, significant damage"). As such, the joint defamation and defamation per se cause of action fails to satisfy the

14

Twombly/Iqbal pleading standards, and this Court grants Defendant's motion to dismiss this cause of action under Rule 12(b)(6).

        iv.    Trade Libel (Count VI)

The sixth count for trade libel similarly lacks sufficient factual allegations to satisfy Rule 8 pleading standards. New Jersey law requires plaintiffs to establish four elements for a valid claim under trade libel: "(1) publication (2) with malice (3) of false allegations concerning plaintiff's property or product (4) causing special damages, i.e., pecuniary harm." Intervet, Inc. v. Mileutis, Ltd., 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016) (quoting System Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1140 (3d Cir. 1977)). Instead of supporting these elements through factual allegations, Plaintiffs instead plead legal conclusions. See, e.g., Am. Compl. ¶ 77 ("The aforesaid conduct, including, but not limited to, the false and defamatory information"); Am. Compl. ¶ 78 ("HVA have suffered, inter alia, a loss of business and has otherwise been damaged"); Am. Compl. ¶ 79 ("The aforesaid conduct of RBC and PNC was willful, wanton, malicious and/or in reckless disregard of HVA's rights"). Accordingly, this count fails Rule 8 pleading standards, and this Court grants Defendant's motion to dismiss the trade libel cause of action under Rule 12(b)(6).

        v.    Intentional and/or Negligent Infliction of Emotional Distress (Count VII)

Plaintiffs' claim for intentional and/or negligent infliction of emotional distress is deficient under the Twombly/Iqbal pleading standards. To establish a prima facie claim for intentional infliction of emotional distress under New Jersey law, Plaintiffs must establish that Defendants intended to cause emotional distress; that the conduct was extreme and outrageous; that the actions proximately caused emotional distress; and that Plaintiffs' emotional distress was severe. Van Tassel v. Ocean Cty., 2017 WL 5565208, at *8 (D.N.J. Nov. 17, 2017). For

negligent infliction of emotional distress, New Jersey law provides two legal theories for Plaintiffs to establish a prima facie case. First, Plaintiffs may show death or serious physical injury of another caused by defendant's negligence; a marital or intimate family relationship between plaintiff and the injured person; observation of the death or injury at the scene of the accident; and resulting severe emotional distress. Van Tassel, 2017 WL 5565208 at *9 (quoting Fleming v. United Parcel Serv., Inc., 255 N.J. Super. 108, 166 (N.J. Super. Ct. Law Div.)). Alternatively, under the "zone of danger rule," the "immediate fear of personal injury could serve as the basis for recovery so long as 'substantial bodily injury or sickness' result." Van Tassel, 2017 WL 5565208 at *9 (quoting Abouzaid v. Mansard Gardens Ass'n, LLC., 207 N.J. 67, 77 (N.J. 2011)). For both intentional and negligent infliction of emotional distress, Plaintiffs once more impermissibly plead legal conclusions in lieu of factual allegations. See, e.g., Am. Compl. ¶ 82 ("Defendants intentionally and/or negligently breached said duties to Harshi which proximately caused her embarrassment, severe emotional distress and mental anguish"); Am. Compl. ¶ 83 ("The aforesaid conduct of RBC and PNC was willful, wanton, malicious and/or in reckless disregard of Harshi's rights"). As such, the count for intentional and/or negligent infliction of emotion distress fails the Twombly/Iqbal pleading standards, and will be dismissed.

For the foregoing reasons, Plaintiffs' final five causes of action in the Amended Complaint all fail to allege sufficient facts to plausibly establish an entitlement to relief. As such, this Court grants Defendant's motion to dismiss the claims for breach of contract (Count III), tortious interference with contract and prospective economic advantage (Count IV), defamation and defamation per se (Count V), trade libel (Count VI), and the intentional and/or negligent infliction of emotional distress (Count VII).

## V. CONCLUSION

Accordingly, for the foregoing reasons; and for good cause shown;

**IT IS** on this 8th day of March, 2018;

**ORDERED** that Defendant PNC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), is **GRANTED** in part and **DENIED** in part; and further

**ORDERED** that that Defendant PNC's motion to dismiss the first count of the Amended Complaint, for violations of New Jersey privacy laws with regard to bank records under the Privacy Act, is **GRANTED**; and further

**ORDERED** that that Defendant PNC's motion to dismiss the second count of the Amended Complaint, for common law invasion of privacy, is **DENIED** without prejudice; and further

**ORDERED** that that Defendant PNC's motion to dismiss the remaining counts of the Amended Complaint, for breach of contract (Count III), tortious interference with contract and prospective economic advantage (Count IV), defamation and defamation per se (Count V), trade libel (Count VI), and the intentional and/or negligent infliction of emotional distress (Count VII), is **GRANTED**; and further

**ORDERED** that Plaintiff is granted leave to further amend the Amended Complaint to cure the pleading deficiencies identified in this Opinion, and specifically to support Count I and Counts III-VII with sufficient factual allegations to plausibly demonstrate an entitlement to relief.

                                                         /s Stanley R. Chesler
                                                       STANLEY R. CHESLER
                                                       United States District Judge