# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

|  |  |
|---|---|
| HV ASSOCIATES LLC and HARSHI VASHISHT, | **Civil Action No. 17-8128 (SRC)** |
| Plaintiffs, | |
| v. | **OPINION & ORDER** |
| PNC BANK, N.A. and ROYAL BANK OF CANADA, | |
| Defendants. | |

**CHESLER**, District Judge

 This matter comes before the Court upon the filing by Defendant Royal Bank of Canada ("RBC") of a motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). Docket No. 26. Plaintiff HV Associates LLC ("HVA") and Plaintiff Harshi Vashisht ("Harshi," collectively "Plaintiffs") oppose this motion (Docket No. 29), and RBC has filed a reply brief (Docket No. 32). The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, RBC's motion will be granted, and this Court will dismiss all of Plaintiffs' claims against RBC.

# I.   FACTUAL BACKGROUND[1]

Plaintiff HVA LLC is a staffing services company owned by Plaintiff Harshi and located in Hoboken, New Jersey. HVA LLC registered in New Jersey in 2007 and had its registration revoked in 2010, but this registration was reinstated as of February 20, 2018. Docket No. 26, 6; Docket No. 29-2, Ex. 9. Defendant RBC is a bank organized under the laws of Canada, and with its headquarters and head office in Canada. Docket No. 26, 4. Of its 1,376 branches worldwide, RBC maintains just one branch in New Jersey, and this limited federal branch only accepts deposits from non-United States sources. Id. at 4-5. As clarified by the parties' moving papers, Plaintiff Harshi had a personal bank account in Canada with RBC, while HVA does not bank with RBC. Docket No. 26, 14; Am. Compl. ¶¶ 24-25. In addition, Harshi and her husband have personal bank accounts in New Jersey with Defendant PNC Bank, N.A. ("PNC"), which is a U.S. bank headquartered in Pennsylvania that operates branches in New Jersey. HVA has a business account located in New Jersey with PNC.

Harshi's husband was formerly an executive for RBC. In March 2012, RBC began an internal investigation of HVA as well as of Techno-Comp, Inc. ("TCI"), a staffing vendor of RBC owned by non-party Sanjay and/or Sashi Gundala. The investigation regarded kickbacks that TCI had allegedly paid HVA in exchange for Harshi's husband exploiting his executive position at RBC to ensure that the bank employed TCI contractors. In an April 2012 letter, RBC

---

[1] The following summary is largely based on factual allegations contained in the Amended Complaint ("Am. Compl.," Docket No. 16), as well as certain additional facts presented in the parties' moving papers. For the purposes of this motion, the Court assumes the truth of the factual allegations contained in the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). This section closely resembles the factual background provided in this Court's Opinion, dated March 8, 2018 (Docket No. 30), which addressed Defendant PNC's motion to dismiss.

invoked its rights under the vendor contract to request an audit of TCI's financial transactions, to which TCI responded by terminating the staffing contract.

In June 2012, RBC sent Plaintiffs and TCI a "Draft Complaint"—which RBC did not subsequently file in court—in which RBC alleged that Plaintiffs had received fraudulent kickbacks from TCI, in violation of various state laws and contractual obligations. In the Draft Complaint, RBC stated that "bank alert resources" had revealed that TCI issued thirteen checks payable to HVA for $20,000 each, which were deposited into HVA's business account at PNC and subsequently used to pay for Harshi's personal expenses. Am. Compl. ¶ 33.

Plaintiffs allege that the "only way RBC would have known [about the TCI-HVA checks and HVA-Harshi transactions at PNC] is if PNC shared private banking information with RBC." Am. Compl. ¶ 34. Around this time, PNC's parent company acquired the American retail business of RBC, and Plaintiffs allege that Defendants employed this "significant business relationship" to "collude[] . . . to retrieve private and confidential banking information." Am. Compl. ¶ 14. After Defendants allegedly shared Plaintiffs' private information, RBC froze Harshi's personal bank accounts in Canada, and Harshi subsequently relocated from Canada to New Jersey. Am. Compl. ¶ 24.

In 2017, Gundala brought a lawsuit (the "Gundala Lawsuit") against Harshi, HVA and other non-parties in New Jersey state court concerning an unrelated real estate transaction. Am. Compl. ¶¶ 41-43. Although the parties identified in RBC's 2012 Draft Complaint entered into a confidentiality agreement to keep confidential "all verbal disclosures, statements, documents, and information contained" in the Draft Complaint (Am. Compl. ¶ 33), Plaintiffs allege that Gundala published "the defamatory statements from the Draft Complaint" in the Gundala Lawsuit.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their complaint in the Superior Court of New Jersey in September 2017, listing PNC Financial Services Group ("PNC Financial") as the sole defendant. PNC Financial removed the action to this Court in October 2017. Docket No. 1. Subsequent to a Rule 16 scheduling conference before Judge Waldor, Plaintiffs filed the Amended Complaint, which substituted PNC Financial with PNC and joined RBC as Defendant.

The Amended Complaint asserts several causes of action against RBC for: violation of New Jersey privacy laws under the New Jersey Electronic Fund Transfer Privacy Act (Count I), common law invasion of privacy (Count II), breach of contract (Count III), tortious interference with contract and prospective economic advantage (Count IV), defamation and defamation per se (Count V), trade libel (Count VI), and intentional and/or negligent infliction of emotional distress (Count VII).

## III.    LEGAL STANDARD

### a.    Rule 12(b)(2) and Personal Jurisdiction

This Court has personal jurisdiction over Defendants to the extent provided under New Jersey state law. See Fed. R. Civ. P. 4(e); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey's long-arm statute authorizes personal jurisdiction over non-resident defendants, such as RBC, to the extent "consistent with due process of law" in the United States Constitution. N.J. Ct. R. 4:4-4; Avdel Corp. v. Mecure, 58 N.J. 264, 268 (N.J. 1971) ("Our long-arm rule . . . permits service on nonresident defendants subject only to 'due process of law.' R. 4:4-4(e). In other words, we will allow out-of-state service to the uttermost limits permitted by the United States Constitution.").

Personal jurisdiction may be either general, where the court "exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum," or specific, for suits "arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn. 8–9 (1984); see also Malik v. Cabot Oil & Gas Corp., 710 F. App'x 561, 563 (3d Cir. 2017).

Only a "limited set of affiliations with a forum will render a defendant amenable to all-purpose," or general jurisdiction in the forum State. Daimler AG v. Bauman, 134 S.Ct. 746, 760 (2014). For an individual, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (U.S. 2011). Domestic corporations are at home at their "place of incorporation and principal place of business." Daimler AG, 134 S.Ct. at 750. Foreign corporations, on the other hand, are subject to general jurisdiction when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919. Critical to the motion at bar, this inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." Daimler AG, 134 S.Ct. at 762 (emphasis added). Recent Supreme Court jurisprudence has underscored the narrow scope and limited circumstances that establish general jurisdiction over foreign corporations. Id. at 757-58 (courts should avoid "exorbitant exercises of all-purpose jurisdiction" and should "decline[] to stretch general jurisdiction beyond limits traditionally recognized").

For specific jurisdiction, the constitutional inquiry is based on the the relationship between the defendant, the forum, and the litigation. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Shaffer v. Heitner, 433 U.S. 186, 204 (1977). Courts may exercise specific jurisdiction over foreign defendants "when the cause of action arises from the defendant's forum related activities" Chavez v. Dole Food Co., Inc., 836 F.3d 205, 223 (3d Cir. 2016) (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 150 (3d Cir. 1996), such that the defendant "should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Specific jurisdiction exists over out-of-state defendants "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal citations omitted). Only forum contacts specifically related to the cause of action support the exercise of specific jurisdiction. Miller, 384 F.3d at 107–08 (While forum contacts "that might otherwise prove jurisdictionally insufficient under a specific jurisdiction analysis may appear more convincing when swaddled in the more extensive, yet unrelated, forum contacts of a foreign defendant, . . . [e]mphasizing contacts unrelated to the asserted causes of action blurs the fundamental distinction between specific and general jurisdiction.").

In addition to the purposeful availment and relationship requirements, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" Burger King, 471 at 476 (quoting International Shoe Co. v. Washington, 66 S.Ct. at 160). To address this fairness question, courts may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Miller, 384 F.3d at 97 (quoting Burger King, 471 U.S. at 477).

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's personal jurisdiction. Miller, 384 F.3d at 97 (quoting Pinker, 292 at 368). In deciding such a motion, a court is "required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)).

### b. Rule 12(b)(6) and the Failure to State a Claim Upon Which Relief May be Granted

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule 8 pleading standard does not require "detailed factual allegations," but it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Allegations that are "merely consistent with a defendant's liability or show the mere possibility of misconduct" do not satisfy the facial plausibility requirement. Santiago v. Warminster Twp., 629 F.3d 121, 133 (3d Cir. 2010). This plausibility determination is "a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009) (quoting <u>Iqbal</u>, 550 U.S. at 679).

Courts in the Third Circuit conduct a two-part analysis when presented with a motion to dismiss under Rule 12(b)(6). "First, the factual and legal elements of a claim should be separated." <u>Fowler</u>, 578 F.3d at 210. Courts are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable" to the nonmoving party. <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (internal citations omitted). While factual allegations must be accepted as true, courts should "not credit either 'bald assertions' or 'legal conclusions' in a complaint." <u>Id</u>. at 177; <u>see also</u> <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 679 (3d Cir. 2012) (in deciding Rule 12(b)(6) motions, federal courts should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements"). To conduct this assessment, courts may consider allegations in the complaint, documents attached thereto or specifically referenced therein, and matters of public record. <u>Pittsburgh v. W. Penn Power Co.</u>, 147 F.3d 256, 259 (3d Cir. 1998). Once the factual and legal elements have been separated, courts in the Third Circuit "then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" <u>Fowler</u>, 578 F.3d at 210–11.

## IV.    DISCUSSION

### a.    Plaintiffs Have Not Pleaded a Valid Claim Against RBC under the New Jersey Electronic Fund Transfer Privacy Act (Count I)

Plaintiffs allege that "PNC, without notifying Plaintiffs, provided RBC with private and confidential banking information belonging to Plaintiffs." Am. Compl. ¶ 16. RBC allegedly otherwise lacked access to these banking records because TCI had terminated its vendor relationship with RBC after it refused RBC's audit request under the terms of the vendor

contract. Am. Compl. ¶¶ 12-13. Plaintiffs further allege that PNC and RBC shared this confidential banking information through "bank alerts," which are suspicious activity reports filed with the Financial Crimes Enforcement Network ("FinCEN") pursuant to the U.S. Bank Secrecy Act ("BSA"). Am. Compl. ¶ 17. For the same reasons noted in this Court's March 8, 2018 Opinion (Docket No. 30), which dismissed this claim against PNC, this Court will likewise dismiss Count I against RBC.

Plaintiffs do not allege that RBC shared banking information with PNC related to transactions in Plaintiffs' Personal Account at PNC, nor does the alleged information sharing concern Harshi's personal accounts at RBC. Instead, Plaintiffs cite two paragraphs from RBC's 2012 Draft Complaint in support of their allegation that PNC and RBC improperly shared banking information related to HVA's Business Account at PNC:

> 23. Information obtained in RBC's investigation from bank alert resources … revealed that during the course of TCI's relationship with RBC, TCI had been making regular payments to a company named HVA. RBC received information that from August 2011 through March 2012, TCI issued thirteen (13) checks payable to HVA for $20,000 each. These checks … were deposited into HVA's bank account at PNC.

> 29. The illegal funds deposited into the HVA account [at PNC] were for the mutual benefit of … Harshi [and her husband] and were used, in part, to pay [their] personal expenses. For example, on August 30, 2011 Harshi wrote a check from the HVA checking account to pay down [her husband's] line of credit, and on January 18, 2012, Harshi wrote a check from the HVA checking account to pay … [her husband's] Visa credit card. Am. Compl. ¶ 33.

As the first cause of action, Plaintiffs allege that the sharing of this banking information violates the New Jersey Electronic Fund Transfer Privacy Act (the "Privacy Act"). N.J. Stat. Ann. § 17:16K et seq. The Privacy Act outlines the permissible circumstances, under New Jersey

law, in which financial institutions and government agencies may disclose private banking account information with third parties. See N.J. Stat. Ann. § 17:16K-3. As noted in this Court's prior Opinion, the Privacy Act regulates 'accounts' that are "demand, time, or savings deposit, or other consumer asset account[s], other than an occasional or incidental credit balance, held either directly or indirectly by a financial institution and established for personal, family or household purposes." N.J. Stat. Ann. § 17:16K-2(b) (emphasis added).

In its capacity as a limited liability company, HVA executed an "Account Agreement for Business Accounts" with PNC in February 2008. Docket No. 20, Ex. B. By its terms, the Business Account does not qualify under the Privacy Act as a "consumer asset account . . . established for personal, family or household purposes." The HVA Business Account does not convert into a consumer account subject to the Privacy Act merely because Harshi or her husband allegedly used funds from the HVA Business Account for personal expenses. The Business Account likewise does not constitute a consumer account by virtue of Plaintiffs' conclusory allegation that "all of [the PNC accounts] were established for personal, family, and/or household purposes." See Am. Compl ¶ 26. In their opposition papers, Plaintiffs' cite this allegation and claim that it "must be presumed to be correct on a motion to dismiss such as this case." Docket No. 29, 29. The language in this allegation—"established for personal, family or household purposes"—merely recites the statutory text in N.J. Stat. Ann. § 17:16K-2(b). Without supporting factual allegations, this bald assertion constitutes a legal conclusion that the HVA business account statutorily qualifies as an 'account' under the Privacy Act. While bound to accept Plaintiffs' factual allegations as true, this Court may disregard such legally conclusory allegations. Kanter, 489 F.3d at 177. Since HVA entered into an "Account Agreement for

Business Accounts" with PNC, it is not facially plausible that the account was instead established for "personal, family, or household purposes."

The only factual allegations connecting RBC to Plaintiffs' personal accounts are in paragraphs 24 and 25 of the Amended Complaint, in which Plaintiffs allege that RBC froze "Harshi's and her family's bank accounts in Canada," which caused Plaintiffs "significant financial harm." Since the alleged freezing of these personal bank accounts does not concern the disclosure of private banking information to third parties, these allegations likewise fail to state a claim with facial plausibility under the Privacy Act. See N.J. Stat. Ann. § 17:16K-3. As such, this Court dismisses with prejudice Plaintiffs' first cause of action for violations of the Privacy Act.

> **b. Plaintiffs' Claim Against RBC for Common Law Invasion of Privacy (Count II) and Defamation (Count V) are Barred by the Statute of Limitations**

Common law invasion of privacy comprises the four distinct torts of intrusion, placing a plaintiff in a false light in the public eye, appropriation of a plaintiff's name or likeness for defendant's benefit, and the public disclosure of private facts. Rolax v. Whitman, 175 F. Supp. 2d 720, 726 (D.N.J. 2001), aff'd, 53 F. App'x 635 (3d Cir. 2002) (quoting Rumbauskas v. Cantor, 138 N.J. 173, 180 (N.J. 1994)). While not expressly alleged in the Amended Complaint, Plaintiffs appear to assert a claim based on the public disclosure of private facts. In Rumbauskas v. Cantor, the New Jersey Supreme Court declined to determine the limitations applicable to the public disclosure of private facts. 138 N.J. 173, 183 (N.J. 1994). Last year, a lower New Jersey court held that public disclosure of private facts is subject to the two-year limitations period. Smith v. Datla, 451 N.J. Super. 82, 91 (N.J. App. Div. 2017). Because the New Jersey Supreme Court has not subsequently acknowledged or confirmed this lower court holding, since Plaintiffs did not address the issue in their briefing, and since Third Circuit law militates against

dismissing claims as time-barred where the basis is not apparent on the face of the complaint (see Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)), this Court declined, at that time, to dismiss Count II as time-barred under the two-year statute of limitations in N.J. Stat. Ann. § 2A:14-2.

In their opposition papers to RBC's motion, however, Plaintiffs concede that the "invasion of privacy by publicly disclosing private facts has a two year statute of limitations." Docket No. 29, 21. In the Amended Complaint, the alleged invasion of privacy concerns "RBC's inappropriate and unlawful request [for] PNC [to] release[] to RBC private and confidential financial information belonging to Plaintiffs." Am. Compl. ¶ 56. RBC's alleged request for private information occurred in 2012. Am. Compl. ¶¶ 21, 29. Plaintiffs likewise concede that their defamation claim is subject to either a one- or two-year limitations. Docket No. 29, 26. The alleged defamation occurred when RBC "improperly shar[ed] private and confidential banking information" and when RBC "prepared a Draft Complaint which it published and which contained libelous material." Am. Compl. ¶¶ 69, 71. This allegedly defamatory conduct likewise occurred more than two years before Plaintiffs filed the complaint.

Nevertheless, Plaintiffs argue that neither claim is time-barred because both claims run "from the publication of the defamatory statements in 2017," when the statements where subsequently republished by non-party Gundala in in the Gundala lawsuit. Docket No. 29, 24. In support of this republication theory, Plaintiffs cite only two decisions from courts in the Third Circuit. While the court in Pelullo v. Patterson addressed whether the "the statute of limitations is restarted by a republication by a third party," that case was expressly decided under Florida law and not New Jersey law. 788 F. Supp. 234, 238 (D.N.J. 1992). The other District of New Jersey case cited by Plaintiffs, Kramer v. Monogram Models, Inc, in fact expressly declined to adopt Plaintiffs' theory, and held that republication by third parties within the limitations period

does not relate the cause of action back to time-barred original publishers whose alleged defamation occurred outside the limitations period. 700 F. Supp. 1348, 1351 (D.N.J. 1988), rev'd on other grounds, 875 F.2d 66 (3d Cir. 1989) ("[T]he court's research does not reveal a single instance in which a New Jersey court has spoken of a "natural and probable" republication of defamatory statements within the context of the statute of limitations."); see also Glenn v. Scott Paper Co., 1993 WL 431161, at *15 (D.N.J. Oct. 20, 1993) ("Under New Jersey law, where a third person has republished a defamatory remark within the limitations period, such republication does not operate to create a new cause of action against the original publisher, where the cause of action respecting the original publication would be time-barred.").

Even if this Court adopted Plaintiffs' theory, such that defamation and public disclosure of private facts by non-party TCI would reset the limitations period against RBC if republication was the "natural and probable" consequence, the Amended Complaint demonstrates how such a standard is not satisfied. "At or about the time that RBC published the Draft Complaint, the parties identified therein entered into a . . . 'Confidentiality Agreement[,]' in which they agreed to keep confidential and for attorneys' eyes only all verbal disclosures, statements, documents and information contained therein." Am. Compl. ¶ 38. Plaintiffs concede that the "the allegations from the Draft Complaint . . . had no logical relation to the claims in the Gundala Lawsuit and were not included to achieve the objects of the Gundala Lawsuit." Am. Compl. ¶ 44. In light of this confidentiality agreement and Plaintiffs' concession that the alleged defamation in the Draft Complaint has "no logical relation" to the Gundala Lawsuit, any defamation in RBC's 2012 Draft Complaint would not have the "natural and probable" consequence of republication five years later in the unrelated Gundala lawsuit. Thus, even adopting Plaintiffs' republication theory, the claims for defamation and public disclosure of private facts would still be time-barred. Since

both claims are time-barred, this Court declines to determine whether such alleged defamation is additionally, as RBC argues, "immunized from liability by the litigation privilege." Docket No. 26, 11. For the forgoing reasons, this Court dismisses with prejudice Count II and Count V of the Amended Complaint.

### c. This Court May Not Exercise Personal Jurisdiction over RBC for Plaintiffs' Breach of Contract Claim (Count III)

As a non-resident of New Jersey that has not consented to suit, RBC is only subject to in personam jurisdiction in this District to the extent authorized by New Jersey's long-arm statute, which authorizes jurisdiction subject to the outer limits of the Fourteenth Amendment Due Process clause. Avdel Corp. v. Mecure, 58 N.J. 264, 268 (N.J. 1971). Consistent with the Fourteenth Amendment, this Court may exercise "all-purpose" or general jurisdiction over any and all claims against RBC if it is "essentially at home" in this District. Daimler AG, 134 S.Ct. at 760. Otherwise, this Court's in personam jurisdiction is limited to specific jurisdiction, for claims "arising out of or related to" RBC's contacts with this District. Helicopteros Nacionales, 466 U.S. at 414. Since neither form of personal jurisdiction applies, this Court will grant RBC's 12(b)(2) motion to dismiss Count III.

While domestic corporations are subject to general jurisdiction in their state of incorporation and principal place of business, foreign corporation—such as RBC—are only subject to general jurisdiction in forums where "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop, 564 U.S. at 924 (emphasis added). Recent Supreme Court jurisprudence has underscored this narrow scope, and warned of the need to avoid "exorbitant exercises of all-purpose jurisdiction" over foreign defendants. Daimler AG, 134 S.Ct. at 761.

RBC's activities in New Jersey do not satisfy the high threshold of being "essentially at home" in this District. RBC's place of incorporation and principal place of business are both in Canada. Docket No. 26-2, ¶ 3. Of its 1,367 branches worldwide, RBC maintains just one branch in New Jersey, and this limited branch only accepts deposits from non-United States sources. Id. at ¶ 4. In its opposition papers, Plaintiffs argue that RBC is subject to general jurisdiction in this District because, among other reasons, (1) it is "one of the largest financial institutions in America;" (2) two wholly-owned RBC subsidiaries conduct corporate and investment banking in New Jersey, from which funds flow "systematically and continuously every day;" (3) RBC "regularly recruits people to work" in New Jersey; and (4) while its Jersey City federal branch is limited, this branch nonetheless has "the same rights and privileges" as RBC's other fully-vested federal branches. Docket No. 29, 2-4.

Plaintiffs' arguments fail to establish that RBC is subject to general jurisdiction in this District. The scope of RBC's U.S.-based financial activities outside of New Jersey is irrelevant to the general jurisdiction analysis. Plaintiffs do not dispute that only one of RBC's 1,367 branches worldwide is located in New Jersey, and this branch—in contrast to RBC's full federal branches located in other states—is limited to accepting deposits from non-United States sources. While funds may flow "systematically and continuously" from RBC's two New Jersey-based subsidiaries, Plaintiffs' argument resembles the flawed argument rejected by the Supreme Court in Daimler AG. Namely, the inquiry is not whether RBC's "in-forum contacts can be said to be in some sense 'continuous and systematic,' [but rather] it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." Daimler AG, 134 S.Ct. at 762 (emphasis added). The financial activity by two subsidiaries and RBC's alleged recruiting in this District do not controvert that the bank

maintains just one of its 1,367 worldwide branches in New Jersey, and accordingly cannot

reasonably be said to be "essentially at home" in this District. Further, the absence of general

jurisdiction over RBC in this District comports with the competing aims of general jurisdiction,

which are to "afford plaintiffs recourse to at least one clear and certain forum in which a

corporate defendant may be sued on any and all claims" while simultaneously permitting out-of-

state defendants to "structure their primary conduct with some minimum assurance as to where

that conduct will and will not render them liable to suit." Daimler AG, 134 S. Ct. at 762 (quoting

Burger King, 471 U.S. at 472).

Without general jurisdiction over RBC, this court's exercise of personal jurisdiction is

limited to claims "arising out of or related to" RBC's contacts in New Jersey. The allegations in

the Amended Complaint, however, fail to plausibly establish that the breach of contract claim

relates to RBC's conduct in this District. RBC allegedly breached "various contracts and/or

agreements" when it forze Harshi's bank accounts. Am. Compl. ¶ 61. These RBC bank accounts

were opened in Canada (Docket No. 26-2, ¶ 8), were located in Canada, and were allegedly

frozen at a time when Harshi and her family were still living in Canada. Am. Compl. ¶ 24. The

Amended Complaint provides no indication that RBC's alleged violative conduct was directed

toward this District, and accordingly the cause of action does not arise from RBC's activities in

this forum. See Chavez, 836 F.3d at 223 (3d Cir. 2016). Since neither general nor specific

jurisdiction exist against RBC for this claim, this Court dismisses Count III against RBC for lack

of personal jurisdiction.

> **d. Plaintiffs' Final Five Causes of Action Do Not State a Valid Claim Against RBC Upon Which Relief May Be Granted**

As noted above, this Court lacks in personam jurisdiction over RBC for Count III (breach

of contract), and Count V (defamation) is barred by the statute of limitations. Additionally, these

two claims—as well as Count IV (tortious interference), Count VI (trade libel) and Count VII (negligent and/or intentional infliction of emotional distress)—do not state a valid claim upon which relief may be granted. That is, once this Court separates Plaintiffs' factual allegations from the impermissible legal conclusions in the Amended Complaint, the remaining facts do not suffice to show a plausible claim for relief. See Fowler, 578 F.3d at 210–11. As such, this Court dismisses Counts IV, VI and VII, and notes the separate and independent basis for dismissing Counts III and V. Because Plaintiffs' failure to state a valid claim against RBC for Counts III through VII reflect many of the same underlying deficiencies as those identified in this Court's March 8 Opinion, which dismissed these same five same counts against co-Defendant PNC, the following sections focus on new arguments raised by Plaintiffs that are specific to RBC.

i. Breach of Contract (Count III)

In the Amended Complaint, Plaintiffs allege that the "aforesaid conduct of RBC including, but not limited to, freezing various accounts of, among others, Harshi, constitutes, inter alia, breaches of various contracts and/or agreements with her concerning those accounts.." Am. Compl. ¶ 61. At the outset, Defendants argue that HVA cannot bring this claim—nor the entire action itself—since is not currently registered as an LLC in New Jersey. This argument appears rebutted by Plaintiffs' Exhibit 9, which demonstrates HVA's current registration as of February 20, 2018. Docket No. 29-2, Exh. 9. Such LLC registration applies *nunc pro tunc* under New Jersey law. See N.J. Stat. Ann. 42:2C-54(c). As such, this Court will not dismiss any counts against RBC on this ground.

As this Court noted when dismissing Count III against PNC, however, Plaintiffs impermissibly allege legal conclusions instead of factual allegations. They do not identify what contract RBC breached, how RBC's actions breached that/those contract(s), what damages

Plaintiffs suffered as a result, or whether Plaintiffs performed their own contractual obligations. See Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). As a result, Plaintiffs have not stated a valid claim for breach of contract. See In re Samsung DLP Television Class Action Litig., 2009 WL 3584352, at *6 (D.N.J. Oct. 27, 2009) (granting motion to dismiss, as "Plaintiffs have failed to sufficiently identify the contracts at issue" and it is "axiomatic that contract-based claims that do not adequately identify the contract at issue . . do not 'raise a right to relief above the speculative level.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007))).

Plaintiffs attempt to distinguish In re Samsung, arguing that here the "contracts being referred to are also specified." Docket No. 29, 31. Plaintiffs' vague identification of the contract(s) does not satisfy Rule 8 pleading standards. Cf. In re Samsung, 2009 WL 3584352, at *6 ("Plaintiffs have failed to sufficiently identify the contracts" where they "simply allude to 'contracts and agreements' that Samsung allegedly breached without more.") with Am. Compl. ¶ 61 ("The aforesaid conduct of RBC . . . constitutes . . . breaches of various contracts and/or agreements."). Even if the contract(s) were sufficiently identified, Plaintiffs nevertheless impermissibly plead legal conclusions for the other elements of their breach of contract claim. In addition to lacking personal jurisdiction over RBC for this claim, this Court will additionally dismiss Count III against RBC for the failure to state a claim upon which relief may be granted.

ii. Tortious Interference with Contract and Prospective Economic Advantage (Count IV)

For the tortious interference claim, Plaintiffs allege that RBC "interfered with HVA's contractual relationships and/or with its prospective economic advantage with such companies as Credit Suisse, Marsh & McLennan, Deloitte Consulting and HCL Technologies" and that RBC "interfered, and will continue to interfere, with, inter alia, Harshi's employability in a regulatory position and other jobs in the banking industry." Am. Compl. ¶¶ 64-65.

Plaintiffs' tortious interference claim against RBC reflects the same pleading deficiencies as the identical claim against PNC, which was dismissed by this Court's March 8 Opinion. Plaintiffs allege no facts in support of: interference done intentionally and with malice, a causal connection between the interference and the loss of prospective gain, and actual damages. See Luttmann v. Tiffany & Co., 2009 WL 197520, at *2 (D.N.J. Jan. 26, 2009). While Plaintiffs identify four companies with whose contractual relationship RBC allegedly interfered, Plaintiffs do not identify any existing contracts with these companies nor any prospective contract or economic gain that was interfered with or lost as a result of RBC's allegedly tortious conduct. Instead, the Amended Complaint impermissibly relies on legal conclusions. As such, this Court will dismiss Count IV against RBC under Rule 12(b)(6).

### iii. Defamation and Defamation Per Se (Count V)

With respect to RBC alleged defamatory conduct, Plaintiffs allege that "[b]y improperly sharing private and confidential banking information through 'bank alerts,' and based upon a faulty investigation, RBC and PNC enabled rumors to circulate concerning, among others, HVA and Harshi, that were demonstrably false." Am. Compl. ¶ 69. Once again, Plaintiffs' Amended Complaint impermissibly pleads legal conclusions instead of factual allegations. See, e.g., Am. Compl. ¶ 73 ("This publicly filed, false and defamatory information"); Am. Compl. ¶ 74 ("HVA and Harshi have suffered, and will continue to suffer, among other things, significant damage"). As such, besides being time-barred by the applicable statute of limitations, Plaintiffs' claim for defamation is additionally deficient under the Twombly/Iqbal standard and will be dismissed under Rule 12(b)(6).

#### iv.   Trade Libel (Count VI)

The sixth count for trade libel similarly lacks sufficient factual allegations to satisfy Rule 8 pleading standards. Instead of demonstrating malice, falsity, and pecuniary harm (see Intervet, Inc. v. Mileutis, Ltd., 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016)) through factual allegations, Plaintiffs instead plead legal conclusions. See, e.g., Am. Compl. ¶ 77 ("The aforesaid conduct, including, but not limited to, the false and defamatory information"); Am. Compl. ¶ 78 ("HVA have suffered, inter alia, a loss of business and has otherwise been damaged"); Am. Compl. ¶ 79 ("The aforesaid conduct of RBC and PNC was willful, wanton, malicious and/or in reckless disregard of HVA's rights"). Accordingly, this count fails Rule 8 pleading standards, and this Court grants RBC's motion to dismiss the trade libel cause of action under Rule 12(b)(6).

#### v.   Intentional and/or Negligent Infliction of Emotional Distress (Count VII)

Plaintiffs' claim for intentional and/or negligent infliction of emotional distress is deficient under the Twombly/Iqbal pleading standards. For both intentional and negligent infliction of emotional distress, Plaintiffs once more impermissibly plead legal conclusions in lieu of factual allegations. See, e.g., Am. Compl. ¶ 82 ("Defendants intentionally and/or negligently breached said duties to Harshi which proximately caused her embarrassment, severe emotional distress and mental anguish"); Am. Compl. ¶ 83 ("The aforesaid conduct of RBC and PNC was willful, wanton, malicious and/or in reckless disregard of Harshi's rights"). As such, the count for intentional and/or negligent infliction of emotion distress fails the Twombly/Iqbal pleading standards, and will be dismissed.

## V.   CONCLUSION

Accordingly, for the foregoing reasons; and for good cause shown;

**IT IS** on this 10th day of April, 2018;

**ORDERED** that Defendant RBC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), is **GRANTED**; and further

**ORDERED** that Count I (violations of the Privacy Act), Count II (common law invasion of privacy), and Count V (defamation and defamation per se) of the Amended Complaint (Docket No. 16) against Defendant RBC are dismissed **WITH PREJUDICE**; and further

**ORDERED** that Counts III (breach of contract), IV (tortious interference with contract and prospective economic advantage), VI (trade libel), and VII (intentional and/or negligent infliction of emotional distress) of the Amended Complaint against Defendant RBC are dismissed **WITHOUT PREJUDICE**; and further

**ORDERED** that Plaintiff is granted leave to further amend the Amended Complaint to cure the pleading deficiencies identified in this Opinion, and specifically to support Count III with in-forum contacts by RBC related to the breach of contract claim and to support Counts III-IV and VI-VII with sufficient factual allegations to plausibly demonstrate an entitlement to relief.

                                                  /s Stanley R. Chesler
                                             STANLEY R. CHESLER
                                             United States District Judge