NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HV ASSOCIATES, LLC, HARSHI VASHISHT, and VISHAL VASHISHT, | : : : | Civil Action No. 17-8128 (SRC) |
|  | : : | OPINION |
| Plaintiffs, | : : |  |
| v. | : : |  |
| PNC BANK, N.A., RBC CAPITAL MARKETS, LLC, and JOHN DOES 1-10, | : : : |  |
| Defendants. | : : |  |

**CHESLER**, District Judge

This matter comes before the Court upon the filing by Defendant RBC Capital Markets, LLC, ("CM LLC") on a motion to dismiss Plaintiffs' Second Amended Complaint and Supplemental Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiffs HV Associates LLC ("HVA"), Harshi Vashisht ("Harshi"), and her husband Vishal Vashisht ("Vishal") (collectively, "Plaintiffs") oppose this motion. The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court reserves decision on CM LLC's motion, and will permit limited jurisdictional discovery.

### I.    FACTUAL BACKGROUND

Plaintiff HVA LLC is a staffing services company owned by Plaintiff Harshi and located in Short Hills, New Jersey. CM LLC is a Minnesota limited liability company with its principal office and place of business located at 200 Vesey Street, New York, New York. CM LLC is a

wholly-owned, indirect subsidiary of the Royal Bank of Canada ("RBC")[1] that provides capital markets and wealth management services. ECF No. 77-2 ¶ 3.[2] CM LLC has approximately 8,766 employees based in forty-two states and the District of Columbia. Id. ¶ 5. CM LLC has approximately 1,829 employees in Minnesota; 2,306 employees in New York; and 1,149 employees in New Jersey. Id. ¶¶ 6-7. It maintains two offices in New Jersey. At the time Plaintiffs filed the Second Amended Complaint adding CM LLC as a Defendant, CM LLC was controlled by two members that are both corporations: RBC USA Holdco Corporation ("RBC USA Holdco"), which owned 99% of CM LLC; and RB CM Member Corp. ("RB CM Member"), which owned 1% of CM LLC. ECF No. 88 at 2. Both member corporations are holding companies with no employees of their own. ECF No. 88-1, ¶ 4. Both members are incorporated in Delaware and have their principal places of business at 200 Vesey Street, New York, New York. ECF No. 88 at 2.[3]

Vishal was formerly an executive for CM LLC, and began his employment with CM LLC sometime in March 2010. Upon accepting the position with CM LLC in 2010, Plaintiffs Harshi, Vishal, and their children moved from New Jersey to Toronto, Canada. Second Am. Compl. ¶¶ 19-22. In March 2012, CM LLC began an internal investigation involving Vishal and Aardeetek Systems, an outside staffing company owned by Vishal's sister-in-law. The internal investigation subsequently evolved to include another staffing vendor called Techno-Comp, Inc.

---

[1] RBC is a bank organized under the laws of Canada, and with its headquarters and head office in Canada. The Court notes that although Plaintiffs seem to refer to CM LLC and RBC interchangeably, they are in fact distinct entities, and Plaintiffs have not attempted to plead otherwise.

[2] ECF No. 77-2 is a declaration by a Managing Director of CM LLC, Chris Walsmley, Esq., who serves as Head of the U.S. Capital Markets Law Group, submitted in support of CM LLC's motion to dismiss.

[3] Plaintiffs explicitly state that they do not dispute CM LLC's representations regarding diversity jurisdiction and the citizenship of its members submitted by CM LLC (ECF No. 88) in response to the Court's December 12, 2018 Order to Show Cause (ECF No. 78). ECF No. 99-1 at 6 fn. 1.

("TCI"), owned by non-parties Sanjay and Sashi Gundala.[4] Id. ¶ 36. The investigation into TCI regarded kickbacks that TCI had allegedly paid to HVA in exchange for Vishal exploiting his executive position at CM LLC to ensure that RBC employed TCI contractors. Id. ¶¶ 37, 83. In an April 2012 letter to TCI, CM LLC invoked its rights under the vendor contract to request an audit of TCI's financial transactions. TCI refused to comply with CM LLC's audit request, and instead terminated its vendor relationship with CM LLC. Id. ¶¶ 37-40.

CM LLC terminated Vishal's employment on or about April 13, 2012. Second Am. Compl. ¶ 67. Plaintiffs Vishal, Harshi, and their children subsequently relocated from Canada back to New Jersey. Id. ¶ 24. Sometime after Vishal's dismissal, in June 2012, RBC sent Plaintiffs and TCI a "Draft Complaint"—which RBC did not subsequently file in court—in which RBC alleged that Plaintiffs had received fraudulent kickbacks from TCI, in violation of various state laws and contractual obligations.[5] In the Draft Complaint, RBC stated that "bank alert resources" had revealed that TCI issued thirteen checks payable to HVA for $20,000 each, which were deposited into HVA's business account at PNC between August 2011 and March 2012, and subsequently used to pay for Harshi's personal expenses. ECF No. 47-2 (Excerpt of Draft Complaint), ¶ 23; Second Am. Compl. ¶ 58.[6]

Plaintiffs allege that the "only way [CM LLC] would have known about the information included in the Draft Complaint" i.e., the TCI-HVA checks and HVA-Harshi transactions at PNC, "is if PNC shared with [CM LLC] this private banking information from HVA's account

---

[4] TCI is a New Jersey corporation with a principal place of business and headquarters located in Somerset, New Jersey. Co-owners Sashi and Sanjay Gundala are both New Jersey residents. Id. ¶ 36.

[5] While Plaintiffs assert that the Draft Complaint was drafted by CM LLC, the Court notes that the only Plaintiff identified in the Draft Complaint is RBC.

[6] HVA maintained a business account with PNC, while Harshi and Vishal maintained personal a checking and savings account with PNC. Second Am. Compl. ¶¶ 130-135.

and from the personal account of the Vashishts." Second Am. Compl. ¶ 92. Plaintiffs further allege that CM LLC "used these checks and other information it illegally obtained relating to Plaintiffs' private banking information to terminate Vishal on or about April 13, 2012." Id. ¶ 67. Moreover, because PNC's parent company, PNC Financial Services Group, Inc., acquired the American retail business of RBC around the time the Vashishts' information was allegedly shared in 2012, Plaintiffs allege that CM LLC employed this "significant, ongoing business relationship" to "illegally obtain[] private and confidential banking information belonging to Plaintiffs from PNC . . . which PNC did not produce pursuant to any 314(b) Request" of CM LLC. Id. ¶ 57. Plaintiffs further assert that at or around the time CM LLC allegedly shared Plaintiffs' private information and terminated Vishal, CM LLC "froze the Vashishts' [RBC] bank accounts" in Canada, which deprived them of access to their savings for a period of ten months, and caused them issues with relocating back to New Jersey following Vishal's dismissal. Id. ¶¶ 70-71. Finally, although Plaintiffs acknowledge that RBC[7] never filed the Draft Complaint in any court, they contend that CM LLC sent the Draft Complaint "to Plaintiffs and TCI and their respective counsel in New Jersey, thereby publishing false and defamatory information in this State." Id. ¶ 86.

a. **THE GUNDALA COMPLAINT**

In April 2017, non-party Sanjay Gundala, co-owner of TCI, filed a Complaint (the "Gundala Complaint") against Harshi, Vishal, HVA, and other non-parties in New Jersey state court concerning an unrelated real estate transaction. Second Am. Compl. ¶ 145.[8] Plaintiffs allege that the Gundala Complaint "repeats the defamatory statements from the Draft Complaint"

---

[7] Again, the Court notes that while Plaintiffs state that CM LLC never filed the Draft Complaint "or any complaint against HVA, Harshi, Vishal or TCI," the only Plaintiff listed on the Draft Complaint is RBC.

[8] The Gundala Lawsuit is apparently still ongoing.

and "published those defamatory statements in a public forum available to everyone including, but not limited to, the then-current and prospective employers of Harshi and Vishal." Id. ¶ 146.

## II.    PROCEDURAL HISTORY

Plaintiffs Harshi and HVA filed their Complaint in the Superior Court of New Jersey in September 2017, listing PNC Financial Services Group ("PNC Financial") as the sole defendant.[9] PNC Financial removed the action to this Court in October 2017. ECF No. 1. On December 4, 2017, Plaintiffs HVA and Harshi filed an Amended Complaint which substituted PNC Financial with PNC and joined the Royal Bank of Canada ("RBC") as a Defendant. See ECF No. 16. On April 10, 2018, this Court granted RBC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), and dismissed RBC as a Defendant. See ECF No. 38.[10] On June 25, 2018, Plaintiffs filed a Second Amended Complaint, adding Vishal as a Plaintiff and adding CM LLC as a Defendant in the instant matter. See ECF No. 46. On November 27, 2018, Plaintiffs filed a Supplemental Complaint, which they assert further bolsters the causes of action alleged in their Second Amended Complaint. See ECF No. 75.

The Second Amended Complaint asserts several causes of action against CM LLC, for: fraud/fraudulent concealment (Count I); civil conspiracy (Count II); breach of contract (Count III); wrongful dismissal (Count IV); compelled defamation (Count V); tortious interference with contract and prospective economic advantage (Counts VI, VII, and XII); breach of implied covenants (Count XI);[11] and common law invasion of privacy and disclosure of confidential

[9] Vishal was not named as a Plaintiff at this time.

[10] Plaintiffs Harshi and HVA were given leave to amend to cure the deficiencies of their Amended Complaint.

[11] The Second Amended Complaint identifies Count XI as "RBCCM's and John Does' Tortious Interference with RBC Client Agreement." See Second Am. Compl. at 36. In their opposition papers, however, Plaintiffs assert that Count XI was mislabeled, and is actually a claim for CM LLC's breach of the RBC Client Agreement's implied covenants. See ECF No. 99-1 at 20 fn.5.

information (Count VIII). Defendant CM LLC now moves to dismiss Plaintiffs' Second Amended Complaint under 12(b)(2) and 12(b)(6).

### III.    LEGAL STANDARD

#### a.    RULE 12(B)(2) AND PERSONAL JURISDICTION

This Court has personal jurisdiction over Defendants to the extent provided under New Jersey state law. See Fed. R. Civ. P. 4(e); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey's long-arm statute authorizes personal jurisdiction over non-resident defendants, such as CM LLC, to the extent "consistent with due process of law" in the United States Constitution. N.J. Ct. R. 4:4-4; Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971) ("Our long-arm rule . . . permits service on nonresident defendants subject only to 'due process of law.' R. 4:4-4(e). In other words, we will allow out-of-state service to the uttermost limits permitted by the United States Constitution.") (citation omitted).

Personal jurisdiction may be either general, where the court "exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum," or specific, for suits "arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn. 8-9 (1984); see also Malik v. Cabot Oil & Gas Corp., 710 F. App'x 561, 563 (3d Cir. 2017).

Only a "limited set of affiliations with a forum will render a defendant amenable to all-purpose," or general jurisdiction in the forum State. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). For an individual, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). "A corporation is 'at home' in the State of its 'place of incorporation and principal

place of business.'" Barth v. Walt Disney Parks & Resorts U.S., Inc., 697 F. App'x 119, 119 (3d Cir. 2017) (quoting Daimler AG, 571 U.S. at 137). Foreign corporations, on the other hand, are subject to general jurisdiction when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919. Critical to the motion at bar, this inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it **essentially at home** in the forum State." Daimler AG, 571 U.S. at 139 (emphasis added). Recent Supreme Court jurisprudence has underscored the narrow scope and limited circumstances that establish general jurisdiction over foreign corporations. Id. at 132-39 (courts should avoid "exorbitant exercises of all-purpose jurisdiction" and should "decline[] to stretch general jurisdiction beyond limits traditionally recognized").

For specific jurisdiction, the constitutional inquiry is based on the relationship between the defendant, the forum, and the litigation. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Shaffer v. Heitner, 433 U.S. 186, 204 (1977). Courts may exercise specific jurisdiction over foreign defendants "when the cause of action arises from the defendant's forum related activities," Chavez v. Dole Food Co., Inc., 836 F.3d 205, 223 (3d Cir. 2016) (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 150 (3d Cir. 1996)), such that the defendant "should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Specific jurisdiction exists over out-of-state defendants "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal citations

omitted). Only forum contacts specifically related to the cause of action support the exercise of specific jurisdiction. Miller, 384 F.3d at 107-08 (While forum contacts "that might otherwise prove jurisdictionally insufficient under a specific jurisdiction analysis may appear more convincing when swaddled in the more extensive, yet unrelated, forum contacts of a foreign defendant, . . . [e]mphasizing contacts unrelated to the asserted causes of action blurs the fundamental distinction between specific and general jurisdiction.").

In addition to the purposeful availment and relationship requirements, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). To address this fairness question, courts may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Miller, 384 F.3d at 97 (quoting Burger King, 471 U.S. at 477).

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's personal jurisdiction. Miller, 384 F.3d at 97 (quoting Pinker, 292 F.3d at 368). In deciding such a motion, a court is "required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)).

## IV.    DISCUSSION

As a non-resident of New Jersey that has not consented to suit, CM LLC is only subject to in personam jurisdiction in this District to the extent authorized by New Jersey's long-arm statute, which authorizes jurisdiction subject to the outer limits of the Fourteenth Amendment

Due Process clause. <u>Avdel Corp. v. Mecure</u>, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971). Consistent with the Fourteenth Amendment, this Court may exercise "all-purpose" or general jurisdiction over any and all claims against CM LLC if it is "essentially at home" in this District. <u>Barth</u>, 697 F. App'x at 119 (quoting <u>Daimler AG</u>, 571 U.S. at 137). Otherwise, this Court's in personam jurisdiction is limited to specific jurisdiction, for claims "arising out of or related to" CM LLC's contacts with this District. <u>Helicopteros Nacionales</u>, 466 U.S. at 414.

Plaintiffs contend that this Court has both general jurisdiction and specific jurisdiction over CM LLC. For the reasons described <u>infra</u>, this Court disagrees. Moreover, it is clear that the viability of many, if not all the claims asserted against CM LLC are questionable when evaluated pursuant to Fed. R. Civ. P. 12(b)(6). However, the Court need not parse Plaintiffs' Second Amended and Supplemental Complaints and reach these various deficiencies until it is established that there is in personam jurisdiction. Since the Court is allowing limited jurisdictional discovery, as outlined below, the Court will reserve its decision on CM LLC's motion to dismiss Plaintiff's Second Amended Complaint and Supplemental Complaint.

### a. PLAINTIFFS HAVE NOT DEMONSTRATED GENERAL PERSONAL JURISDICTION OVER CM LLC

While domestic corporations are subject to general jurisdiction in their state of incorporation and principal place of business, foreign corporations—such as CM LLC—are only subject to general jurisdiction in forums where "their affiliations with the State are so 'continuous and systematic' as to render them **essentially at home** in the forum State." <u>Goodyear Dunlop</u>, 564 U.S. at 924 (emphasis added). Recent Supreme Court jurisprudence has underscored this narrow scope, and warned of the need to avoid "exorbitant exercises of all-purpose jurisdiction" over foreign defendants. <u>Daimler AG</u>, 571 U.S. at 139. CM LLC's activities in New Jersey do not satisfy the high threshold of being "essentially at home" in this

District. CM LLC is a Minnesota limited liability company with its principal place of business in New York. ECF No. 88 at 2. However, as an LLC, CM LLC's citizenship is determined by "the citizenship of each of its members." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010). At the time Plaintiffs filed their Second Amended Complaint adding CM LLC as a defendant, CM LLC had two controlling members that are both corporations: RBC USA Holdco Corporation ("RBC USA Holdco"), which owned 99% of CM LLC; and RB CM Member Corp. ("RB CM Member"), which owned 1% of CM LLC. ECF No. 88 at 2. Both member corporations are holding companies incorporated in Delaware, with no employees of their own, whose principal places of business are located at the same address in New York City. See ECF No. 88-1 ¶¶ 4-5, 7.[12]

According to Ms. Douvas, RBC USA Holdo, the majority member, used its New York office for all official purposes including mailing and tax and other reporting purposes. Its June 2018 board meeting was held in Toronto, Canada, while all prior meetings were held at its New York office. Id. ¶ 5. RBC USA Holdco held bank accounts at RBC's New York, New York branch and at City National Bank in Beverly Hills, California; it did not maintain any New Jersey Bank accounts. Id. At the time the Complaint was filed, Ms. Douvas asserts that only two of RBC USA Holdco's directors maintained offices within the company, both of which were in Toronto, Canada. Id. ¶ 6. Its officers, however, were split between New York, Toronto, and New Jersey (Jersey City). Id. Ms. Douvas states that RBC CM Member, the minority member, similarly used its New York office for all official purposes and that all the company's board meetings were held in its New York City office. Id. ¶ 7. RBC CM Member also held bank

---

[12] ECF No. 88-2 is a declaration provided by a Senior Vice President and U.S. General Counsel for RBC, Maria E. Douvas, in response to this Court's December 12, 2018 Order to Show Cause (ECF No. 78). Ms. Douvas asserts she has general supervision over all legal matters concerning CM LLC, which, as explained above, is an indirect subsidiary of RBC.

accounts at RBC's New York, New York branch and at City National Bank in Beverly Hills, California; it did not maintain any New Jersey Bank accounts. Id. At the time the Complaint was filed, both directors of RBC CM Member maintained offices in New York, New York. Id. ¶ 8. Its officers were split between New York, New York, and Jersey City, New Jersey. Id.

In their opposition papers, Plaintiffs argue that CM LLC is subject to general jurisdiction in this District because, among other reasons, (1) they have continuous and systematic contacts with New Jersey; (2) CM LLC's top executives all operate from New Jersey, rendering New Jersey its' "nerve center" from which its operational, technical, control, compliance, legal, human resources, and administrative functions all operate;[13] (3) CM LLC voluntarily submitted to this Court's jurisdiction in other cases, has litigated in New Jersey's courts before, and recently transferred a case from SDNY to this Court; (4) CM LLC consented to this Court's jurisdiction because it is registered to do business in New Jersey and has a registered agent for service of process in New Jersey; (5) CM LLC has substantial business dealings here, as it employs 1,149 employees in New Jersey, which represents 13% of its workforce; (6) CM LLC has two offices in New Jersey; (5) taken in totality, these facts demonstrate CM is at home in New Jersey. ECF No. 99-1 at 6-16.

Plaintiffs' arguments fail to establish that CM LLC is subject to general jurisdiction in this District. CM LLC and its two corporate members are not incorporated in New Jersey and do not have their principal place of business in New Jersey. Contrary to Plaintiffs' arguments, Daimler establishes that "engaging in a substantial, continuous, and systematic course of

---

[13] The Court notes that Plaintiff provides multiple certifications, which contain conflicting information. For example, in his first certification, Plaintiff Vishal provides that CM LLC's Chief Operating Officer is John Thurlow, who is based in New Jersey. See ECF No. 94-1 ¶ 5. The attached "Executive Profile" provides that Mr. Thurlow is the U.S. Chief Operating Officer for CM LLC. See id., Ex. B (Executive Profile of John J. Thurlow). In contrast to his first certification, Vishal's second certification, and Plaintiffs' brief, states that Mark Hughes was CM LLC's Chief Operating Officer. See ECF No. 94-2 at 3-6.

business is insufficient to establish general jurisdiction." Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., No. 16-665, 2017 U.S. Dist. LEXIS 114733, at *14 (E.D. Pa. July 24, 2017). Moreover, although it is possible that a corporation may also be subject to a forum other than where it is incorporated or has its principal place of business, "such circumstances are 'exceptional' and only appropriate when the following condition is met: the corporation's 'affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" Laverty v. Cox Enters., Civil Action No. 18-1323 (FLW) (TJB), 2019 U.S. Dist. LEXIS 13588, at *7 (D.N.J. Jan. 29, 2019). Following Daimler, courts have "commented that 'it is incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" Chavez v. Dole Food Co., 836 F.3d 205, 224 (3d Cir. 2016) (citing Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014)).

Although this Court is required to accept all Plaintiffs' factual allegations as true and resolve factual disputes in their favor, Plaintiffs have not provided sufficient competent evidence to establish that this is an exceptional case such that the place of incorporation/principal place of business rule should be disregarded. Nor have they established that CM LLC's "nerve center" is in New Jersey. Plaintiffs' reliance on job postings for CM LLC's office in New Jersey, that CM LLC employs over 1,000 employees here and leases two offices in New Jersey (in Jersey City and Parsippany), and a certification asserting that a number of high-level regional positions are based in New Jersey,[14] among other things, does not constitute the type of sufficient competent

---

[14] Specifically, Plaintiff certifies as follows:

> 4. As to general jurisdiction, it is clear to me that CM is "at home" in New Jersey and in the court system in this State. For example, not only does CM have over 1,100 employees based in New Jersey, see Declaration of Chris Walmsley, Esq. (ECF 77-2), a review of CM's recent job postings discloses the types of work done here. See Exhibit "A" annexed hereto. For example, the postings include the following jobs in New Jersey: Head of Emerging Technology, Head of Central

evidence that would merit finding CM LLC at home here, since "[a] corporation that operates in many places can scarcely be deemed at home in all of them." Daimler, 134 S. Ct. at 762 n.20. CM LLC has approximately 8,766 employees based in forty-two states and the District of Columbia. CM LLC has approximately 1,829 employees in Minnesota; 2,306 employees in New York; and 1,149 employees in New Jersey. Even when taking Plaintiffs' allegations to be true, Plaintiffs have at best identified CM LLC's Jersey City office as being a regional hub from which substantial business of a nationwide company is conducted. They have failed to show that New Jersey is the true "nerve center" from which all of CM LLC's overall operations are directed such that it would be at home here. Nor, following Daimler, is it determinative for a general jurisdiction analysis that CM LLC was registered to do business in New Jersey and appointed an agent for receipt of process in New Jersey.[15] Further, Plaintiffs fail to cite to any

---

Compliance, Deputy Head of AML (Anti-Money Laundering) & Financial Crimes, Bank Regulatory Compliance Director, Head of Compliance, Legal Counsel and U.S. Head of Internal Audit. The following functions and those persons in charge of each function also are based in New Jersey:

   a)   Technology;
   b)   Finance;
   c)   Treasury;
   d)   Legal;
   e)   Human Resources;
   f)   Pre and Post Trade for Brokerage Business;
   g)   Risk Management;
   h)   Funding;
   i)   Anti-Money Laundering;
   j)   Compliance;
   k)   Regulatory;
   l)   Credit Risk; and
   m)   Audit.

In short, virtually every facet of CM's business operates from, and is based in, New Jersey.

ECF No. 94-1 (Cert. of Vishal Vashisht) ¶ 4.

[15] See Display Works, LLC v. Bartley, 182 F. Supp. 3d 166, 174 (D.N.J. 2016) (stating that New Jersey's business registration statutes, N.J.S.A. §§ 14A:13-3(1) and 14A:4-1, and the service statute, N.J.S.A. § 14A:4-2, "do not expressly discuss consent or general jurisdiction" and finding that "the New Jersey statutory scheme does not permit jurisdiction by consent by virtue of registration to do business here or actually doing business here.") This Court

authority for the proposition that general jurisdiction may be established due to CM LLC's voluntarily participation or consent to jurisdiction in other, unrelated cases in this district. In fact, Courts outside this district have held the opposite to be true. See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc., 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case . . . extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available."). This Court finds that CM LLC may in fact have business contacts in New Jersey that are substantial, continuous, and systematic, but they fail to meet the high threshold required by Daimler. See Daimler, 571 U.S. at 138 (Holding that "the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping.").[16] Accordingly, Plaintiffs have failed to demonstrate that this Court may exercise general jurisdiction over CM LLC.

**b. PLAINTIFFS HAVE NOT ESTABLISHED SPECIFIC JURISDICTION BY MINIMUM CONTACTS OR THE CALDER EFFECTS TEST.**

Without general jurisdiction over CM LLC, this Court's exercise of personal jurisdiction is limited to claims "arising out of or related to" CM LLC's contacts in New Jersey. The allegations in the Second Amended Complaint and Supplemental Complaint, however, fail to plausibly establish that any of Plaintiffs' claims relate to CM LLC's conduct or contacts in this District.

---

agrees with Display Works that mere registration of a business does not amount to consent to general jurisdiction in New Jersey. To find otherwise would be inconsistent with Daimler.

[16] The Court further clarified that "the general jurisdiction inquiry does not 'focu[s] solely on the magnitude of the defendant's in-state contacts.' . . . General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." Id. at 139 n.20.

> For a court to exercise specific jurisdiction over a claim there must be an "affiliation between the forum and the underlying controversy, **principally, [an] activity or an occurrence that takes place in the forum State."** Goodyear, supra, at 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (internal quotation marks and brackets omitted). **When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.**

Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1776 (2017) (emphases added).

Unilateral acts of Plaintiffs claiming some relationship with nonresident defendants do not suffice to establish minimum contacts. See Helicopteros Nacionales de Colombia, 466 U.S. at 414; Hanson, 357 U.S. at 253. Where the causes of action alleged are intentional torts, the Court may alternatively exercise specific jurisdiction if Plaintiff can satisfy the three-pronged Calder effects test. See Calder v. Jones, 465 U.S. 783, 789-91, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Under this effects test, plaintiffs must show: "(1) the defendant committed an intentional tort; (2) the forum state is the focal point of the harm suffered by plaintiff; and (3) the forum state is the focal point of the defendant's tortious activity, because the defendant expressly aimed its tortious conduct there." Wolstenholme v. Bartels, 511 F. App'x 215, 219 (3d Cir. 2013) (citing Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007)). Although Calder provides a slightly different avenue for determining whether jurisdiction exists, the Third Circuit has expressly noted its narrow scope, stating that:

> In applying this test, we have underscored that the scope of the law established in Calder is narrow, employing "a conservative reading" to reflect the fact that Calder did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998). Moreover, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." Marten, 499 F.3d at 297. Therefore, "[o]nly if the 'expressly aimed' element of the effects test is met need we consider the other two elements." Id.

Wolstenholme, 511 F. App'x at 219. Thus, even under Calder, "[t]he proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 571 U.S. 277, 291 (2014) (quoting Calder, 465 U.S. at 788).

### i. VISHAL'S BREACH OF CONTRACT AND WRONGFUL DISMISSAL CLAIMS

Plaintiffs argue in their opposition papers that this Court has specific jurisdiction over CM LLC regarding Vishal's breach of contract and wrongful dismissal claims (Counts III and IV). As discussed above, "[s]pecific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King Corp., 471 U.S. at 472). Importantly, this Circuit has held that "[i]nformational communications in furtherance of that contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction." Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 32 (3d Cir. 1993). Similarly, in assessing the availment prong for breach of contract claims, "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident. The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Burger King, 471 U.S. at 479). For specific jurisdiction to be properly exercised in these cases, Plaintiffs must additionally establish that CM LLC's "contacts with the forum were instrumental in either the formation or the breach of the contract." Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012) (citing Deutz AG, 270 F.3d at

150). Plaintiffs' opposition papers point to several instances in which CM LLC, a non-resident

defendant, directed its activities to New Jersey, including that:

- Plaintiffs' breaches of contract and wrongful dismissal claims are predicated on CM LLC's alleged breaches of Vishal's Offer Letter and his wrongful termination;

- CM LLC engaged an executive search firm to contact Vishal in New Jersey;

- CM LLC interviewed Vishal by phone while he was located in New Jersey; CM LLC paid for Vishal to travel from New Jersey to CM LLC's Toronto offices to meet C-Suite executives;

- Human resources spoke with Vishal on approximately fifty occasions while he was in New Jersey;

- Vishal exchanged multiple emails with CM LLC as part of the application process from his home computer in New Jersey;

- CM LLC sent the Offer Letter to Vishal in New Jersey and he signed it in New Jersey before sending it back to Toronto;

- According to a conversation with CM LLC's Chief Operating Officer, Mark Hughes, it was anticipated that Vishal would be transferred to the New York office after three years in Toronto;

- "Hughes's statement, that he expected [Vishal] would only be assigned to the Toronto office for three (3) years and then transferred to the New York office, made the prospect of working for CM particularly appealing since [Vishal's] family would be able to resume living in New Jersey. This was a significant factor in [his] decision (made with Harshi) to accept CM's offer;"

- Vishal initially worked at CM LLC's New York office for six months, and commuted from his home in New Jersey; during this six-month period Vishal worked from home once a week; the Offer Letter states that if Vishal was terminated without cause CM LLC "will cover the cost of relocating [him] and [his] family back to NY;"[17] and

- CM LLC deposited Vishal's salary in Plaintiffs' joint bank account with PNC in New Jersey during this six-month time period.

ECF No. 99 at 15-18.

---

[17] Plaintiffs assert that the Offer Letter mistakenly states that they would relocate back to New York, when the Offer Letter should have stated New Jersey.

Despite reciting this litany of alleged contacts with New Jersey, Plaintiffs fail to show CM LLC's "**contacts with the forum** were instrumental in either the formation or the breach of the contract," Control Screening LLC, 687 F.3d at 167 (emphasis added), and these facts do not provide sufficient minimum contacts to satisfy due process. "Merely contracting with a resident of the forum state is insufficient, standing alone, to support a finding of personal jurisdiction." Rowland Glob. LLC v. Good Clean Love, Inc., Civil Action No. 15-5738 (MCA), 2016 U.S. Dist. LEXIS 32587, at *11 (D.N.J. Mar. 14, 2016) (citing Vetrotex, 75 F.3d at 151). Indeed, while CM LLC indisputably contracted with Vishal, the only nexus with New Jersey in this instance is the fortuitous connection that the Offer Letter was sent there because it happens to be where Plaintiffs resided. Plaintiffs allege misconduct by CM LLC for Vishal's improper termination, which occurred two years after Plaintiffs relocated from New Jersey to Toronto, Canada. Moreover, Plaintiffs themselves argue that Vishal's clam for wrongful dismissal is based exclusively on Canadian law, where "[u]nder Ontario law, an action for wrongful dismissal sounds in contract." ECF No. 99-1 at 19 fn.3.

Though Plaintiff points to these initial contacts with New Jersey, the very Offer Letter Plaintiff relies on provides that Vishal would initially work from CM LLC's New York office, after which he would be permanently transferred to Toronto. Specifically, the Offer Letter states as follows:

Dear Vishal:

On behalf of RBC Capital Markets (RBC CM), we are very pleased to offer you the position of Managing Director, PMO with Royal Bank of Canada legal entity **located in Toronto, Canada.** . . .

In order for you to begin employment with RBC CM immediately**, you will begin your employment with our New York office**, RBC Capital Markets Corporation until you have renewed your Permanent Residency card necessary for your employment in Canada. We anticipate the processing of this renewal to take

approximately 4-6 weeks. **Once renewal of your PR Card is received, you will permanently transfer to Royal Bank of Canada legal entity located in Toronto, Canada.**

ECF No. 94-2, Ex. 2 (Offer Letter) at 1 (emphases added).[18]

The evidence shows CM LLC contemplated a long-term employment relationship that may have begun in New York on a temporary basis, but was ultimately envisioned for Toronto—not New Jersey. Even if Vishal's employment in Toronto was meant to be temporary in contemplation of a subsequent return to New York, this still provides no relevant nexus to New Jersey. Moreover, while Plaintiffs might vehemently disagree that his dismissal "for cause" was proper, this alleged breach of the Offer Letter occurred while Vishal was in Canada, and in no way connects to any of CM LLC's contacts with New Jersey. Again, the very purpose of this contract was for ultimate employment in Toronto, Canada, or potentially New York. The contract itself in no way contemplated any contacts with New Jersey. That Plaintiff hoped he and his family would be able to resume living in New Jersey if transferred back to work in CM LLC's New York office does not constitute the type of "contemplated future consequences" sufficient for establishing minimum contacts with the forum. See Burger King, 471 U.S. at 479. In these circumstances, the parties' initial course of dealing and the fact that the contract was executed in New Jersey and Canada, and negotiated while Vishal was a New Jersey resident, does not change this analysis or provide sufficient minimum contacts for specific jurisdiction to be proper.

## ii. PLAINTIFFS' INTENTIONAL TORT CLAIMS

With regard to their intentional tort claims, Plaintiffs argue that "there is little, if any

---

[18] Plaintiffs note that "[t]he Offer Letter refers to a 'permanent' transfer and not to a three (3) year assignment, because Hughes and I decided that it would undermine my ability to build relationships with the Toronto executives if they thought I was only assigned there temporarily." ECF No. 94-2 ¶ 31.

need, to employ [the Calder effects] test to 'enhance [CM's] otherwise insufficient contacts' with New Jersey . . . since CM's conduct occurred in New Jersey and not 'outside the forum.'" ECF No. 99-1 at 26 (second alteration in original). Plaintiffs base this contention on the alleged fact that "CM completely ignores the fact that <u>everything</u> about the Accounts, including Plaintiffs' contractual and common law rights relating to them, is New Jersey based." <u>Id.</u> (emphasis in original).

Although Specific jurisdiction is generally assessed on a claim-by-claim basis, "it may not be necessary to do so for certain factually overlapping claims." <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 317 n.3 (3d Cir. 2007) (citing <u>Remick v. Manfredy</u>, 238 F.3d 248, 255-56 (3d Cir. 2001)). Here, Plaintiffs' intentional tort claims arise from the same set of facts, so the Court will analyze them together. The intentional tort claims against CM LLC are alleged as follows: fraud/fraudulent concealment as to all Plaintiffs (Count I); civil conspiracy as to all Plaintiffs (Count II); compelled defamation as to Vishal (Count V); tortious interference with prospective economic advantage as to Vishal (Count VI); tortious interference with contract as to Harshi and Vishal (via the RBC Client Agreement) (Count VII); tortious interference with contract as to all Plaintiffs (via the PNC Agreements) (Count XII); breach of the implied covenants as to Harshi and Vishal (via the RBC Client Agreement) (Count XI); and common law invasion of privacy as to Harshi and Vishal, as well as disclosure of confidential information as to HVA (Count VIII).

While it is clear that CM LLC has unrelated contacts in New Jersey, Plaintiffs cannot satisfy the second prong of the specific jurisdiction analysis: relatedness. Nor have they satisfied the third prong of the <u>Calder</u> effects test—that CM LLC "expressly aimed" its alleged tortious conduct at New Jersey. "To establish that the defendant 'expressly aimed' his conduct,

the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" Marten v. Godwin, 499 F.3d 290, 297-98 (3d Cir. 2007) (citing IMO Indus., 155 F.3d at 266). "If a plaintiff fails to show that the defendant 'manifest[ed] behavior intentionally targeted at and focused on' the forum,' . . . the plaintiff fails to establish jurisdiction under the effects test." Id. (citation omitted). "Even in the context of an intentional tort, 'random, fortuitous, or attenuated contacts' or the 'unilateral activity of a plaintiff' do not establish a basis for personal jurisdiction." Scott v. Lackey, 587 F. App'x 712, 716 (3d Cir. 2014) (not precedential).

It is undisputed that all CM LLC's relevant conduct occurred in Canada, and that all of Plaintiffs' claims arise out of, or relate to, the events surrounding Vishal's employment and subsequent termination while living and working in Canada. Their RBC bank accounts were opened in Canada, were located in Canada, and were allegedly frozen at a time when Vishal and his family were still living in Canada. That CM LLC allegedly had knowledge that Plaintiffs would return to New Jersey should Vishal's employment end "without cause," or that Vishal regularly travelled through Newark Airport in New Jersey in order to attend meetings at CM LLC's New York Office, is similarly of no consequence for purposes of this analysis. Further, although Plaintiffs attribute certain actions to CM LLC relating to the Draft Complaint, RBC is the only party listed as Plaintiff on that complaint, and Plaintiffs do not argue an alter ego theory or any basis for attributing the actions of RBC to CM LLC. Nor do Plaintiffs provide any basis for attributing the actions of PNC, a wholly unrelated entity, to CM LLC. For this analysis, it is equally irrelevant that CM LLC either allegedly requested or received banking information illegally from PNC, a Philadelphia-based bank, regarding Harshi and Vishal's bank accounts that

were incidentally opened and maintained in New Jersey. This applies equally to HVA, despite the fact that it is a New Jersey Corporation with a PNC bank account that was opened at a branch in New Jersey. Moreover, any potential violation of PNC's Account Agreements, as alleged by Plaintiffs, cannot be attributed to CM LLC—since these alleged agreements are between Plaintiffs and PNC alone. Nor does it help Plaintiffs that PNC closed Plaintiffs' accounts in October 2012 after Vashal and Harshi had resumed living in New Jersey, as it was PNC, and not CM LLC, that closed these accounts. In other words, CM LLC's actions *in Canada* —in relation to Plaintiffs' invasion of privacy, tortious interference with account agreements, and other related claims— do not create sufficient contacts with New Jersey for purposes of personal jurisidiction simply because its conduct affected or was directed at Plaintiffs that were known to have some New Jersey connections. See Walden, 571 U.S. at 290 ("Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.")[19] Based on this record, the Court cannot conclude that Plaintiffs' tortious interference, civil conspiracy, fraud, and other claims arose from CM LLC's conduct in New Jersey.

Even assuming, *arguendo*, that CM LLC had purposefully directed activities at New Jersey, this litigation did not arise out of any of these activities or its contacts in New Jersey, as

---

[19] See also Lasala v. Marfin Popular Bank Pub. Co., 410 F. App'x 474, 477 (3d Cir. 2011) (not precedential) (noting that "this Court's decision in Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) . . . states that the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under Calder. In the absence of 'specific facts showing a deliberate targeting of [the forum],' Marten, 499 F.3d at 298, the District Court properly refused to premise personal jurisdiction upon the effects test.")

all of CM LLC's relevant and allegedly wrongful conduct against Plaintiffs occurred in, and related to, Vishal's term of employment and dismissal in Canada, while Vishal and Harshi were in fact Canadian residents.[20] See O'Connor, 496 F.3d at 318 ("Contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself."). That CM LLC has two New Jersey offices and employs over 1,000 individuals in New Jersey does nothing to support Plaintiffs' claims, as their claims are wholly unrelated to any of CM LLC's activities here. The Second Amended Complaint and Supplemental Complaint provide no indication that CM LLC's alleged violative conduct was directed toward this District, or that Plaintiffs' claims arise out of or relate to CM LLC's forum contacts or New-Jersey related activities. See Chavez, 836 F.3d at 223 (3d Cir. 2016). Thus, Plaintiffs fail to demonstrate that CM LLC's New Jersey contacts are sufficiently related to Plaintiffs' claims to satisfy the requirements of due process. See Burger King, 471 U.S. at 472; see also Chavez, 836 F.3d at 223 (quoting Vetrotex, 75 F.3d at 151) (Specific jurisdiction is present "when the cause of action arises from the defendant's forum-related activities").

In sum, even when taking Plaintiffs' allegations as true and resolving all factual disputes in Plaintiffs' favor, neither the Second Amended Complaint, Supplemental Complaint, or Vishal's certifications allege any facts that provide a basis for the Court to reasonably infer that CM LLC expressly aimed its purportedly tortious activity at New Jersey with the requisite intentionality required for the exercise of specific jurisdiction, or that New Jersey was the focal point of this tortious activity, let alone that the this litigation arises out of or relates to any of these activities. See Wolstenholme, 511 F. App'x at 219. The mere fact that CM LLC's conduct

---

[20] Indeed, Plaintiffs admit as much in their Complaint. See Second Am. Compl. ¶ 69 ("As a result of Vishal's wrongful dismissal, and based upon the fact that he was in Canada pursuant to a work Visa, Vishal and his family could no longer remain there and were required to relocate to the United States.").

affected Plaintiffs with connections to the forum State "does not suffice to authorize jurisdiction." Walden, 571 U.S. at 291. Accordingly, Plaintiffs have failed to meet their burden of establishing a prima facie showing that specific jurisdiction exists over CM LLC.

### c.   PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY

Although Plaintiffs submit that they have established a prima facie showing of personal jurisdiction, they alternatively argue that "[i]n the event any doubt remains . . . Plaintiffs respectfully submit jurisdictional discovery must be permitted." ECF No. 99-1 at 29. Plaintiffs assert that their factual allegations, "as well as CM [LLC]'s own admissions, demonstrate that discovery likely will reveal that CM [LLC] has additional contacts with New Jersey." Id. at 30.

Third Circuit caselaw provides that "[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010) (quoting Toys "R" Us, 318 F.3d at 455). Jurisdictional discovery is "particularly appropriate where the defendant is a corporation." Metcalfe, 566 F.3d at 336. However, "[a] plaintiff may not . . . undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." Eurofins Pharma, 623 F.3d at 157 (citation omitted). Accordingly, while district courts should generally allow for jurisdictional discovery unless Plaintiff's basis for jurisdiction is "clearly frivolous," Toys "R" Us, 318 F.3d at 456, "jurisdictional discovery is not available merely because the plaintiff requests it." Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 108 n. 38 (3d Cir. 2015).

Here, Plaintiffs have not presented any factual allegations regarding jurisdictional discovery, and have failed to establish that New Jersey is the "nerve center" of CM LLC's

operations. On this record, however, it is unclear exactly where CM LLC's "nerve center" is. As described above, Plaintiffs arguably demonstrated that at least some high-ranking executives are based in CM LLC's Jersey City office; CM LLC did not refute these assertions. Moreover, Vishal's conflicting certifications provide that Mark Hughes, who was located in Toronto, was CM LLC's Chief Operating Officer (see ECF No. 94-2 at 3-6), while also stating that CM LLC's Chief Operating Officer is John Thurlow, who is based in Jersey City, New Jersey. See ECF No. 94-1 ¶ 5. Review of the attached "Executive Profile" reveals John Thurlow to be listed as the U.S. Chief Operating Officer for CM LLC. See id., Ex. B (Executive Profile of John J. Thurlow). The record is therefore insufficient to demonstrate if Mr. Thurlow and the other Jersey City executives described by Plaintiffs are regional executives, or whether they are executives who would in fact be instrumental in directing the "nerve center" operations of this entity. Accordingly, although Plaintiffs have not demonstrated that New Jersey is the "nerve center" for CM LLC so as to permit the exercise of general jurisdiction, Plaintiffs have nevertheless demonstrated some conflicting information such that in an excess of caution, the Court will permit limited jurisdictional discovery. This jurisdictional discovery— directed solely to the issue of general jurisdiction— is to be completed **within 45 days** of the date of this Opinion, and will be limited to:

- <u>Five</u> (5) written interrogatories, with no subparts; and

- <u>One</u> (1) deposition pursuant to Fed. R. Civ. P. 30(b)(6), of an individual with knowledge about the operations of Defendant CM LLC.

Within **15 days thereafter**, Plaintiffs shall submit supplemental briefing as to general jurisdiction over CM LLC, limited to no more than 15 pages, double-spaced. CM LLC shall submit its responsive papers, limited to no more than 15 pages, **within 15 days thereafter**. No

further submissions by the parties will be considered.

V.    CONCLUSION

For the foregoing reasons, the Court reserves decision on CM LLC's motion to dismiss Plaintiffs' Second Amended Complaint and Supplemental Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), pending the supplemental submissions of the parties as outlined above.

An appropriate Order will be filed.

      s/ Stanley R. Chesler   
STANLEY R. CHESLER
United States District Judge

Dated: April 18, 2019