NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HV ASSOCIATES, LLC, HARSHI VASHISHT, and VISHAL VASHISHT, : : : Plaintiffs, : : v. : : PNC BANK, N.A., RBC CAPITAL MARKETS, LLC, and JOHN DOES 1-10, : : : Defendants. : : | Civil Action No. 17-8128 (SRC) <br><br> OPINION |

HV ASSOCIATES, LLC, HARSHI
VASHISHT, and VISHAL VASHISHT,          :

                                        :          **Civil Action No. 17-8128 (SRC)**

                     Plaintiffs,        :

                                        :                    **OPINION**

          v.                            :

                                        :

PNC BANK, N.A., RBC CAPITAL
MARKETS, LLC, and JOHN DOES 1-10,       :

                                        :

                    Defendants.         :

**CHESLER**, District Judge

      This matter comes before the Court upon the filing by Defendant PNC Bank, National Association ("PNC") on a motion to dismiss Plaintiffs' Second Amended Complaint and Supplemental Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs HV Associates LLC ("HVA"), Harshi Vashisht ("Harshi"), and her husband Vishal Vashisht ("Vishal"), (collectively, "Plaintiffs"), oppose this motion. The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, PNC's motion will be granted, and this Court will dismiss all of Plaintiffs' claims against PNC.

## I.     FACTUAL BACKGROUND

      Plaintiff HVA is a staffing services company owned by Plaintiff Harshi and located in Hoboken, New Jersey. PNC is a national bank headquartered in Pittsburgh, Pennsylvania, with numerous branches throughout New Jersey. CM LLC is a Minnesota limited liability company with its principal office and place of business located at 200 Vesey Street, New York, New York.

CM LLC is a wholly-owned, indirect subsidiary of the Royal Bank of Canada ("RBC")[1] that provides capital markets and wealth management services. Vishal was formerly an executive for CM LLC, and began his employment with CM LLC sometime in March 2010. Upon accepting the position with CM LLC in 2010, Plaintiffs Harshi, Vishal, and their children moved from New Jersey to Toronto, Canada. Second Am. Compl. ¶¶ 19-22.

In March 2012, CM LLC began an internal investigation involving Vishal and Aardeetek Systems, an outside staffing company owned by Vishal's sister-in-law. The internal investigation subsequently evolved to include another staffing vendor called Techno-Comp, Inc. ("TCI"), owned by non-parties Sanjay and Sashi Gundala.[2] Id. ¶ 36. The investigation into TCI regarded kickbacks that TCI had allegedly paid to HVA in exchange for Vishal exploiting his executive position at CM LLC to ensure that RBC employed TCI contractors. Id. ¶¶ 37, 83. In an April 2012 letter to TCI, CM LLC invoked its rights under the vendor contract to request an audit of TCI's financial transactions. TCI refused to comply with CM LLC's audit request, and instead terminated its vendor relationship with CM LLC. Id. ¶¶ 37-40.

CM LLC terminated Vishal's employment on or about April 13, 2012. Second Am. Compl. ¶ 67. Plaintiffs Vishal, Harshi, and their children subsequently relocated from Canada back to New Jersey. Id. ¶ 24. Sometime after Vishal's dismissal, in June 2012, RBC sent Plaintiffs and TCI a "Draft Complaint"—which RBC did not subsequently file in court—in which RBC alleged that Plaintiffs had received fraudulent kickbacks from TCI, in violation of various state laws and contractual obligations.[3] In the Draft Complaint, RBC stated that

---

[1] RBC is a bank organized under the laws of Canada, and with its headquarters and head office in Canada.

[2] TCI is a New Jersey corporation with a principal place of business and headquarters located in Somerset, New Jersey. Co-owners Sashi and Sanjay Gundala are both New Jersey residents. Id. ¶ 36.

[3] While Plaintiffs assert that the Draft Complaint was drafted by CM LLC, the Court notes that the only Plaintiff identified in the Draft Complaint is RBC.

"information obtained in RBC's investigation from bank alert resources" had revealed that TCI issued thirteen checks from its Bank of America checking account, payable to HVA for $20,000 each, which were deposited into HVA's business account at PNC between August 2011 and March 2012, and subsequently used to pay for Harshi's personal expenses. ECF No. 85, Ex. D (Excerpt of Draft Complaint) ¶¶ 23, 29; Second Am. Compl. ¶ 58.

HVA maintained a business account with PNC, while Harshi and Vishal maintained a personal checking and savings account with PNC. Second Am. Compl. ¶¶ 130-135. Plaintiffs allege that the information "did not come from Bank of America because Bank of America subsequently did not close TCI's account(s) and, moreover, the Vashishts were able to open an account with that bank later in 2012." Id. ¶ 59. Plaintiffs further provide that "[i]t is apparent that TCI also did not provide the information to [CM LLC]. Although TCI had access to the checks it paid to HVA, it did not have access to HVA's outgoing checks — including those mentioned by [CM LLC] in the draft complaint prepared by [CM LLC's] attorney[.]" Id. ¶ 60. CM LLC allegedly otherwise lacked access to these banking records because neither TCI nor HVA banked with RBC, and TCI had terminated its vendor relationship with RBC after it refused RBC's audit request under the terms of the vendor contract. Id. ¶¶ 41, 59-61. Plaintiffs further allege that PNC and RBC illegally shared this confidential banking information "under the pretext of non-existent 'bank alerts,'" which are suspicious activity reports filed with the Financial Crimes Enforcement Network ("FinCEN") pursuant to Section 314(b) of the U.S. Bank Secrecy Act ("BSA"). Id. ¶ 1.

Plaintiffs contend that the "only way [CM LLC] would have known about the information included in the Draft Complaint" i.e., the TCI-HVA checks and HVA-Harshi transactions at PNC, "is if PNC shared with [CM LLC] this private banking information from HVA's account and from the personal account of the Vashishts." Id. ¶ 92. Plaintiffs further

3

allege that CM LLC "used these checks and other information it illegally obtained relating to Plaintiffs' private banking information to terminate Vishal on or about April 13, 2012." Id. ¶ 67. Moreover, because PNC's parent company, PNC Financial Services Group, Inc., acquired the American retail business of RBC around the time the Vashishts' information was allegedly shared in 2012, Plaintiffs aver that CM LLC employed this "significant, ongoing business relationship" to "illegally obtain[] private and confidential banking information belonging to Plaintiffs from PNC . . . which PNC did not produce pursuant to any 314(b) Request" of CM LLC. Id. ¶ 57. Finally, Plaintiffs allege "[t]hat PNC was the source is further confirmed by the fact that Vishal, after having been wrongfully discharged by RBCCM, was anticipating a job offer from PNC in June 2012, only to have those discussions come to an abrupt stop and his three connections with PNC employees via LinkedIn all drop him," as well as the fact that "the checks cover only a short time span (August 2011 to March 2012), information that a PNC teller could retrieve without having to look at microfiche, while a 314(b) Request would have resulted in the exchange of documents covering a longer time span." Id. ¶¶ 62-63.

### a. THE GUNDALA COMPLAINT

In April 2017, non-party Sanjay Gundala, co-owner of TCI, filed a Complaint (the "Gundala Complaint") against Harshi, Vishal, HVA, and other non-parties in New Jersey state court concerning an unrelated real estate transaction. Id. ¶ 145.[4] Plaintiffs allege that the Gundala Complaint "repeats the defamatory statements from the Draft Complaint" and "published those defamatory statements in a public forum available to everyone including, but not limited to, the then-current and prospective employers of Harshi and Vishal." Id. ¶ 146.

---

[4] The Gundala Lawsuit is apparently still ongoing.

## II.    PROCEDURAL HISTORY

Plaintiffs Harshi and HVA filed their Complaint in the Superior Court of New Jersey in September 2017, listing PNC Financial Services Group ("PNC Financial") as the sole defendant.[5] Plaintiffs aver that they had not pursued their claims against Defendants prior to the filing of the unrelated Gundala Complaint in December 2016, "because they did not want to repeat in a public forum the false accusations made against them by RBC and/or RBCCM [CM LLC] due to a well-founded and reasonable concern that it would interfere with their ability to find comparable employment in the banking industry and, in particular, in the regulatory area which is Harshi's area of expertise." Second Am. Compl. ¶ 147.

PNC Financial removed the action to this Court in October 2017. ECF No 1. On December 4, 2017, Plaintiffs HVA and Harshi filed an Amended Complaint which substituted PNC Financial with PNC and joined the Royal Bank of Canada ("RBC") as a Defendant. See ECF No. 16. On March 8, 2018, this Court granted in part and denied in part PNC's motion to dismiss pursuant to 12(b)(6) and dismissed all claims against PNC, except for Plaintiffs' invasion of privacy claim (Count II). See ECF No. 30.[6] On May 4, 2018, this Court granted PNC's motion for reconsideration of its March 8, 2018 Order, and dismissed Plaintiffs' invasion of privacy claim (Count II) with prejudice, as time-barred by New Jersey's two-year statute of limitations period. See ECF No. 41. On June 25, 2018, Plaintiffs filed a Second Amended Complaint, adding Vishal as a Plaintiff and adding CM LLC as a Defendant in the instant matter. See ECF No. 46. On November 27, 2018, Plaintiffs filed a Supplemental Complaint, which they assert

---

[5] Vishal was not named as a Plaintiff at this time.

[6] Plaintiffs Harshi and HVA were given leave to amend to cure the deficiencies identified in Counts I and III-VII of their Amended Complaint. See ECF No. 30 at 17.

further bolsters the causes of action alleged in their Second Amended Complaint. See ECF No. 75.

The Second Amended Complaint asserts five causes of action against PNC, for: fraud/fraudulent concealment (Count I); civil conspiracy (Count II); common law invasion of privacy and disclosure of confidential information (Count VIII); breach of contract (Count IX); and breach of the implied covenant of good faith and fair dealing (Count X). Defendant PNC now moves to dismiss Plaintiffs' Second Amended Complaint and Supplemental Complaint under Federal Rule of Civil Procedure 12(b)(6).

## III.    LEGAL STANDARD

Defendants move for dismissal of the entire Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The moving party bears the burden of showing that no claim has been stated. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule 8 pleading standard does not require "detailed factual allegations," but it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. (quoting Twombly, 550 U.S. at 556). Allegations that are "merely consistent with a defendant's liability or show the mere possibility of misconduct" do not satisfy the facial plausibility requirement. Santiago v. Warminster Twp., 629 F.3d 121, 133 (3d Cir. 2010). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 550 U.S. at 679).

Courts in the Third Circuit conduct a two-part analysis when presented with a motion to dismiss under Rule 12(b)(6). "First, the factual and legal elements of a claim should be separated." Fowler, 578 F.3d at 210. Courts are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable" to the nonmoving party. Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (citation omitted) (internal quotation marks omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)). Moreover, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 678-79; see also Fowler, 578 F.3d at 210-11 (holding that a court reviewing a complaint on a Rule 12(b)(6) motion need not accept a "legal conclusion couched as a factual allegation."). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. Thus, while factual allegations must be accepted as true, courts should "not credit either 'bald assertions' or 'legal conclusions' in a complaint." Kanter, 489 F.3d at 177 (qutoing Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005)); see also James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d

Cir. 2012) (in deciding Rule 12(b)(6) motions, federal courts should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements").

To conduct this assessment, courts may consider allegations in the complaint, documents attached thereto or specifically referenced therein, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). A Court may also consider "document[s] *integral to or explicitly relied* upon in the complaint," or "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.7 (3d Cir. 2016) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) and PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)) (internal quotation marks omitted) (alteration in original). Once the factual and legal elements have been separated, courts in the Third Circuit "then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 210-11 (citation omitted). The Court will apply this standard as it analyzes, in turn, the various claims asserted by Plaintiffs in the Second Amended Complaint and Supplemental Complaint.

## IV. Discussion

### a. Plaintiffs Have Not Plead A Valid Claim for Fraud/Fraudulent Concealment (Count I)

Count I of the Second Amended Complaint alleges that both PNC and CM LLC intentionally misrepresented how CM LLC obtained Plaintiffs' private banking records and that PNC fraudulently concealed its' illegal release and disclosure of these records to CM LLC, which was not done "pursuant to any bank alerts or 314(b) requests." Second Am. Compl. ¶ 152. Plaintiffs further allege that they relied on these false statements to their detriment, and that as a result, they have suffered damages. Finally, Plaintiffs contend that this fraudulent concealment

prevented them from timely asserting their invasion of privacy claims, and equitable tolling should thus apply to toll the two-year statute of limitations applicable to their invasion of privacy claim.

Plaintiffs' fraudulent concealment claim against PNC suffers from one overriding fatal flaw: Plaintiffs have failed to allege, or provide any facts, to support their contention that they engaged in *any* communications with PNC between 2012 and 2017, let alone that PNC concealed or misrepresented information to Plaintiffs during this time period. More specifically, a thorough review of their Supplemental Complaint and Second Amended Complaint fails to provide any allegations that from the time this alleged disclosure occurred, in 2012, to the time on or about this Complaint was filed, in September 2017, that PNC made any representations to Plaintiffs regarding the alleged disclosure of information. In fact, Plaintiffs fail to provide any information regarding communications with PNC during these intervening years. Review of the Second Amended Complaint does not provide any attempts at communication with PNC or factual support thereof before the fall of 2017. See Second Am. Compl. ¶¶ 114-124. While Plaintiffs plead a plethora of interactions with or communications from CM LLC allegedly indicating the fraud or misrepresentation— during the period following the disclosure to the time the suit was initiated— Plaintiffs have failed to plead any instances of such alleged fraud or fraudulent concealment by PNC, let alone plead such facts with particularity as required by Fed. R. Civ. Pro. 9(b). For example, Plaintiffs provide that:

> 2. For years Plaintiffs repeatedly requested the Banks to produce copies of any bank alert or 314(b) Request concerning Plaintiffs' bank accounts, but the Banks steadfastly refused to do so and, moreover, failed to acknowledge that there were none. A 314(b) Request is the only lawful means by which the Banks could have exchanged Plaintiffs' private and confidential banking information without Plaintiffs' authorization. Had there been a 314(b) Request, the Banks would have readily acknowledged it long ago because, if done properly, it would have enabled

the Banks to invoke the safe harbor provisions of the Patriot Act and avoid liability.

3. Instead of admitting that they had failed to comply with 314(b), the Banks intentionally misled Plaintiffs for years by fraudulently claiming that any banking information that they may have exchanged was done pursuant to law.

. . . .

151. RBCCM and PNC fraudulently concealed from Plaintiffs that RBCCM, and its John Doe employees, requested and obtained Plaintiffs' private and confidential banking records from PNC illegally and not pursuant to any 314(b) Requests.

152. RBCCM, PNC and their John Doe employees fraudulently concealed from Plaintiffs that PNC illegally released and disclosed Plaintiffs' private and confidential banking records to RBCCM illegally and not pursuant to any 314(b) Requests.

153. Despite repeated requests, RBCCM and PNC failed and refused to provide Plaintiffs with the purported bank alerts and written documentation concerning the purported basis of their decision to close Plaintiffs' accounts in a deliberate effort to conceal from Plaintiffs their illegal conduct.

154. In furtherance of their fraudulent concealment of their illegal activity, RBCCM and PNC jointly requested that this Court quash the Subpoena that HVA and Harshi served on Grannum in an effort to determine the factual basis of the allegations in the Draft Complaint.

Second Am. Compl. ¶¶ 2-3, 151-154. As against PNC, Plaintiffs' fraudulent concealment claim does not meet the stringent pleading requirements of Rule 9(b). Indeed, Plaintiffs fail to assert with particularity any fraud or fraudulent concealment on PNC's part. In light of this, there appears to be no factual support for Plaintiffs' claims that PNC willfully misled, misrepresented, or fraudulently concealed their alleged illegal disclosure of Plaintiffs' banking information to CM LLC. Accordingly, Plaintiffs have provided no basis to support their allegations of fraud or fraudulent concealment against PNC.

Finally, the Court notes that to the extent that Plaintiffs rely on fraudulent concealment, it is clear from a review of the pleadings and attached documents that Plaintiffs knew or suspected

that Defendants had illegally shared their banking information in April 2013. See Second Am. Compl., Ex. E (Email from Susheela Verma, Esq., to counsel for CM LLC, dated Apr. 18, 2013). The from email from Plaintiffs' counsel states, in pertinent part: "Sandra, Your client [CM LLC] has not been truthful in this matter. **If it was truthful, it would not have taken a fifth on the issue of bank alerts where it invaded my clients' privacy.**" Id. (emphasis added). Thus, Plaintiffs' own factual allegations contradict their assertion of reasonable reliance or that they were in fact misled, as the email from their own attorney provides that at least as of April 18, 2013, Plaintiffs suspected that PNC and CM LLC had improperly shared Plaintiffs' banking information. Other than conclusory statements that CM LLC maintained it had lawfully obtained Plaintiffs' banking information, Plaintiffs provide no explanation for why or how the banks lulled them into complacency so as to trick them into forfeiting their causes of action.

### b. PLAINTIFFS HAVE NOT PLEAD A VALID CLAIM FOR COMMON LAW INVASION OF PRIVACY OR DISCLOSURE OF CONFIDENTIAL INFORMATION (COUNT VIII)

Under New Jersey law, common law invasion of privacy comprises four distinct torts: intrusion; placing a plaintiff in a false light in the public eye; appropriation of a plaintiff's name or likeness for defendant's benefit; and the public disclosure of private facts. Rolax v. Whitman, 175 F. Supp. 2d 720, 726 (D.N.J. 2001) (citing Rumbauskas v. Cantor, 138 N.J. 173, 180 (1994)). In Count VIII, Plaintiffs assert a claim of common law invasion of privacy as to Harshi and Vishal, and disclosure of confidential information as to HVA.

To establish a claim for the public disclosure of private facts, Plaintiffs must demonstrate "that private matters were revealed, that dissemination of such facts would be highly offensive to a reasonable person, and that there is no legitimate public interest in the disclosure." Capers v. FedEx Ground, No. 2:02-CV-5352 (WJM), 2012 U.S. Dist. LEXIS 78818, at *14-15 (D.N.J. June 6, 2012) (citation omitted); see also G.D. v. Kenny, 205 N.J. 275, 309 (2011). Recent New

Jersey court opinions have noted that publicity is distinguished from publication. See Dzwonar v. McDevitt, 348 N.J. Super. 164, 177 (App. Div. 2002). Publicity means that:

> the matter is made public[] by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.
> . . . .
> Thus, it is not an invasion of the right of privacy, [within the tort of invasion of privacy by giving publicity to private life] . . . to communicate a fact concerning the plaintiff's private *life to a single person or even to a small group of persons.*

Id. (citing Restatement (Second) of Torts § 652D cmt. A (1977)).

It is undisputed that under New Jersey law, individuals have a protected interest in their private banking records. State v. McAllister, 184 N.J. 17, 29 (2005) ("[A]rticle I, paragraph 7 of the New Jersey Constitution recognizes a citizen's reasonable expectation of privacy in his or her bank records, even when those records are in the possession of the bank."). Plaintiffs plead specific facts to plausibly establish that their private banking records, as to HVA's business checking account, were disclosed to CM LLC. See Second Am. Compl. ¶¶ 58, 63, 87 (identifying private records contained in the Draft Complaint related to TCI's issuance of 13 checks worth $20,000 each deposited into HVA's business account at PNC, and identifying specific instances and dates when Harshi wrote checks from HVA's business account at PNC to pay for personal expenses). Exactly how many CM LLC employees had access to the information or records of the TCI-HVA and Harshi-RBC transactions and the RBC Draft Complaint is not discernable from the current record, although it is clear that at least one or more of Vishal's superiors, as well as RBC's counsel, the Gundalas, as owners of TCI, and their counsel, were aware of the information contained in the RBC Draft Complaint. Assuming that Plaintiffs have established publication, Plaintiffs have further established, with facial plausibility, that it was PNC who revealed this information to RBC. Unlike other potential sources suggested

by Defendant, PNC was privy to both types of bank records (the TCI-HVA checks originating

from TCI's Bank of America checking account and the HVA-Harshi payments), while CM LLC

arguably was privy to only the HVA-Harshi payments, since these payments were used by

Harshi to pay off Vishal's RBC lines of credit and credit cards. Plaintiffs also allege that this

information sharing was facilitated by the "significant business relationship" between

Defendants created through the then-recent acquisition by PNC's parent company of the

American retail business of RBC. Second Am. Compl. ¶ 57. Together, these factual allegations

render it plausible that PNC revealed these banking records to CM LLC. However, even if

Plaintiffs could plausibly demonstrate each of the required elements, the insurmountable problem

here is that their claim is nevertheless time-barred by the two-year statute of limitations— an

issue this Court already previously decided when it dismissed Plaintiffs' invasion of privacy

claim with prejudice in its May 4, 2018 Opinion and Order. See ECF No. 41.

Although Plaintiffs attempt to recharacterize their invasion of privacy claim as one by

HVA for an allegedly distinct tort of disclosure of confidential information, this attempt is both

disingenuous and ineffective. Plaintiffs fail to provide any authority or caselaw to support their

theory that this alleged improper disclosure of confidential information is in fact a tort that is

separate and distinct from the invasion of privacy claim that the Court previously dismissed with

prejudice, and the cases cited are inapposite or wholly unsupportive of their claim. See ECF No.

97 at 27-28 (citing Lamorte Burns & Co. v. Walters, 167 N.J. 285, 302 (2001)).

Plaintiffs impermissibly rely on Lamorte to support their claim that disclosure of

confidential information, standing alone, can comprise a cause of action applicable to the facts of

this case. Plaintiffs' argument ignores that Lamorte concerned the violation of a restrictive

covenant in an employment contract, and the associated improper disclosures by employees to

13

third parties of information deemed to be protected (such as customer lists or other similar business records, i.e., in the context of tortious interference claims or unfair competition). Lamorte and the line of cases following it are simply an expansion on and extension to the trade secrets doctrine, involving employee liability for breach of a duty of loyalty to the employer and related claims. It is unclear as to how Plaintiffs are attempting to connect such an analysis to the instant action, where the records disclosed are allegedly HVA's confidential banking information, from one bank to another. Except for conclusory allegations that this is in fact a distinct tort and not the same claim previously dismissed with prejudice, Plaintiffs' brief is bereft of any legal analysis or support.

Further, it is unclear on what basis Plaintiffs are attempting to revive their invasion of privacy claims, or assert new ones, as they relate to Harshi and Vishal. As discussed above, their allegations, even when taken as true, only relate to the disclosure of information concerning HVA's banking records. Plaintiffs cite two paragraphs from RBC's 2012 Draft Complaint in support of their allegation that PNC improperly shared banking information related to their personal PNC bank accounts:

> 23. Information obtained in RBC's investigation from bank alert resources … revealed that during the course of TCI's relationship with RBC, TCI had been making regular payments to a company named HVA. RBC received information that from August 2011 through March 2012, TCI issued thirteen (13) checks payable to HVA for $20,000 each. These checks … were deposited into HVA's bank account at PNC. . . .

> 29. The illegal funds deposited into the HVA account [at PNC] were for the mutual benefit of … Harshi [and Vishal] and were used, in part, to pay [their] personal expenses. For example, on August 30, 2011 Harshi wrote a check from the HVA checking account to pay down [Vishal's] line of credit, and on January 18,

> 2012, Harshi wrote a check from the HVA checking account to pay … [Vishal's] Visa credit card.

Second Am. Compl. ¶ 87 (alterations in original).

The problem here for Plaintiffs is that their omissions and alterations of these two paragraphs in the Draft Complaint are in fact misleading. Paragraphs 23 and 29 of the Draft Complaint provide in full, as follows:

> 23. Information obtained in RBC's investigation from bank alert resources also revealed that during the course of Techno-Comp's relationship with RBC, Techno-Comp had been making regular payments to a company named HV Associates. RBC received information that from August 2011 through March 2012, Techno-Comp issued 13 checks payable to HV Associates for $20,000 each. These checks were all drawn upon Techno-Comp's checking account at Bank of America and were deposited into HV Associates' bank account at PNC Bank. Separate and apart from these 13 payments, upon information and belief, Techno-Comp made other payments to HV Associates as well.
>
> . . . .
>
> 29. The illegal funds deposited into the HV Associates account were for the mutual benefit of Vishal Vashisht and Harshi Vashisht and were used, in part, to pay the Vashishts' personal expenses. For example, on August 30, 2011 Harshi Vashisht wrote a check from the HV Associates checking account to pay down **Vishal Vashisht's RBC line of credit,** and on January 18, 2012, Harshi Vashisht wrote a check from the HV Associates checking account to pay **Vishal Vashisht's RBC Visa credit card.**

ECF No. 85, Ex. D (Excerpt of Draft Complaint) ¶¶ 23, 29 (emphasis added).

Thus, aside from PNC's closure of their personal bank accounts, Plaintiffs have not provided any information or factual support that rises above the level of mere speculation as to what *personal* banking information may have been improperly disclosed. Nevertheless, whether referring to HVA's business account or Vishal and Harshi's personal checking account, what is clear is that both invasion of privacy claims run far afoul of the two-year statute of limitations for

15

public disclosure of private facts, and despite Plaintiffs' protestations, no claims of fraudulent concealment or equitable tolling can mitigate this result. The reason for this is simple: Plaintiffs cannot plausibly claim fraudulent concealment or reliance on alleged misinformation to support the application of equitable tolling, when they have wholly failed to provide any factual support of any communications between Plaintiffs and PNC following the alleged disclosure in 2012 until the time this suit was initiated in 2017. See Miller v. New Jersey Dept. of Corrections, 145 F.3d 616, 619 (3d Cir. 1998) ("Allegations of fraudulent concealment tolling the statute of limitations must meet the requirements of Federal Rule of Civil Procedure 9(b).") (internal citation omitted). As discussed above, Plaintiffs' fraud claim does not meet the stringent pleading requirements of Rule 9(b). Moreover, as indicated by communications from Plaintiffs' own counsel, Plaintiffs have asserted from at least as far back as 2013 their belief that CM LLC's representations— that the information was legally obtained by CM LLC— were false. Moreover, and more significantly, the Second Amended Complaint specifically admits that Plaintiffs' reason for not pursuing their claims earlier was "because they did not want to repeat in a public forum the false accusations made against them by RBC and/or RBCCM [CM LLC] due to a well-founded and reasonable concern that it would interfere with their ability to find comparable employment in the banking industry and, in particular, in the regulatory area which is Harshi's area of expertise." Second Am. Compl. ¶ 147. This judicial admission in the Second Amended Complaint is sufficient to demonstrate that Plaintiffs' failure to file a timely complaint was not due to Defendant's fraudulent concealment but because they made their own tactical decision not to pursue claims that they admittedly knew about.

Count VIII is indisputably a claim that was previously dismissed with prejudice, no matter how Plaintiffs now seek to revive and recast this claim in their Second Amended

Complaint. Plaintiffs also contend that this claim was not in fact previously asserted because Vishal was not previously named as a Plaintiff in this action. Plaintiffs do not identify what other viable cause of action, if any, or other duty, privilege, or statute was breached by the alleged disclosures at issue, and this Court has already ruled that Plaintiffs' claim for invasion of privacy, via a public disclosure of private facts, was barred by the statute of limitations. See ECF No. 41 (May 4, 2018 Order and Opinion). As plead by Plaintiffs in their Second Amended Complaint, an allegation characterized as the disclosure confidential information, without more, is not a distinct cause of action in this context. Plaintiffs' claim for common-law invasion of privacy was previously dismissed with prejudice on statute of limitations grounds. See ECF No. 41. This claim remains time-barred despite Plaintiffs' contention that the statute of limitations should be tolled, because Plaintiffs have failed to show equitable toiling should apply.

Count VIII of Plaintiffs' Second Amended Complaint simply restates their claim based upon the disclosure of their confidential banking information. This Court previously dismissed these claims with prejudice. Plaintiffs' restatement or mere recharacterization of these claims cannot revive them.

### c. PLAINTIFFS HAVE NOT PLEAD A VALID CLAIM FOR BREACH OF CONTRACT (COUNT IX)

There are four elements to state a valid claim for breach of contract under New Jersey law: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). In Count IX of their Second Amended Complaint, Plaintiffs aver a breach of contract claim against PNC based upon the disclosure provisions contained in three operative contracts relating to their bank accounts:

PNC's 2007 Business Account Agreement, PNC's 2012 Business Account Agreement, and PNC's 2012 Personal Account Agreement and the associated Privacy Notice.

At the time RBC sent Plaintiffs the Draft Complaint, HVA had a business checking account and Harshi and Vishal had personal bank accounts with PNC. See ECF No. 20, Exs. A-C (the "Business Account Agreements" between PNC and HVA); ECF No. 20, Ex. D (the "Personal Account Agreement" between PNC and Harshi and Vishal). The Court will analyze Plaintiffs' breach of contract claims as to the business and personal account agreements in turn.

### i. BREACH OF CONTRACT AS TO THE BUSINESS ACCOUNT AGREEMENTS

In its capacity as a limited liability company, HVA executed an "Account Agreement for Business Accounts" with PNC in February 2008. ECF No. 20-3, Ex. B. Plaintiffs allege that PNC disclosed Plaintiffs' confidential and private banking information, in contravention of the 2007 and 2012 Business Account Agreements' express terms. Plaintiffs point to the language contained in the "Information" provision on page 18 of the 2007 Business Account Agreement which states:

> INFORMATION
>
> To serve our customers efficiently and offer a full range of financial services, **we share customer transaction and experience information among our PNC Bank family of companies. PNC Bank companies also share other personal information,** such as applications, financial statement, and credit reports. You may request that we do not share this other personal information (except where such information is used by one PNC Bank company service to service customer accounts for another) by writing to us at PNC Bank . . . Please include the name under which your account has been opened, your name, address, account number(s), social security number or tax IS number. **We also share customer information as permitted or required by law.**
>
> You agree to cooperate with us in any record keeping and reporting which we believe to be necessary to fulfill government requirements. We may record conversations we have with you about your account.

18

ECF No. 20-2, Ex. A (2007 Business Account Agreement) at 19 (emphasis added). The 2012 Business Account Agreement contains identical or substantially the same language. See ECF No. 20-4, Ex. C (2012 Business Account Agreement) at 8.

Based on this language contained in the 2007 and 2012 Business Account Agreements, Plaintiffs allege that "PNC's 2007 Business Account Agreement limits with whom PNC may share customer transactions;" that "[l]ikewise, PNC's 2007 Business Account Agreement represents it will not share customer information unless permitted by law;" and that "PNC's 2012 Business Account Agreement also confirms that it only will share customer information among PNC Bank's family of companies." Second Am. Compl. at 34. Thus, Plaintiffs aver that PNC breached these account agreements by illegally disclosing HVA's private and confidential banking information to CM LLC.

In its motion to dismiss, PNC argues that Plaintiffs' claim for breach of contract must fail "because the alleged breach does not relate to any discernable contract provision," and that Plaintiffs "suggest[] that the Business Agreements contain certain phrases and representations that do not actually exist as represented." ECF No. 85-7 at 39-40. This Court agrees.

Although it is plausible that as discussed more in-depth infra, PNC shared confidential information with CM LLC regarding HVA's banking activities, Plaintiffs fail to actually point to language contained within the "Information" provision of the 2007 and 2012 Business Account Agreements that PNC violated, or which supports their interpretation. The provision specifically provides that "we share customer transaction and experience information among our PNC Bank family of companies," and that they "share customer information as permitted or required by law." Nowhere in these clauses are the exclusionary or limiting phrases that Plaintiffs allege PNC violated. Instead, the 2007 and 2012 Business Account Agreements clearly contain

language that is inclusory, rather than exclusory. Nothing in these contractual provisions limits who PNC may share information with— this language provides what PNC will do; not what it won't do. Plaintiffs attempt to read into the Business Account Agreements more limiting or restrictive language than actually exists in the Business Account Agreements. The Court will not read into the contracts a limitation on disclosures that the contract does not actually contain.

Plaintiffs have not pleaded sufficient facts to plausibly demonstrate how PNC breached the operative contracts: the 2007 and 2012 Business Account Agreements. As such, this Court grants PNC's motion to dismiss the breach of contract claim under Rule 12(b)(6).

### ii. BREACH OF CONTRACT AS TO THE PERSONAL ACCOUNT AGREEMENTS

Although Plaintiffs contend that PNC breached the 2012 PNC Personal Account Agreement and the associated Privacy Notice, Plaintiffs do not sufficiently allege, either affirmatively or indirectly, that PNC actually shared any banking information with CM LLC related to transactions in their personal accounts.

Review of the text in the 2012 Draft Complaint fails to provide any information relating to or deriving from Harshi's or Vishal' *personal* checking or savings accounts at PNC, let alone that PNC shared such information with CM LLC. Instead, the information Plaintiffs rely on as factual support for the disclosure contained in paragraphs 23 and 29 of the Draft Complaint relates only to facts or transactions concerning HVA's business account with PNC, as well as TCI's Bank of America checking accounts. Both of these accounts are indisputably commercial (and not personal) accounts. Accordingly, Plaintiffs fail to provide any factual basis to support their claims that PNC shared their personal checking or savings account information with CM LLC. Plaintiffs' allegations that:

88.     The Draft Complaint also suggests that PNC and its John Doe employees reviewed and disclosed private and confidential banking information in Harshi's and Vishal's personal checking and savings accounts at PNC.

89.     For example, the Draft Complaint notes in paragraph 29 that "just" two examples of alleged improper transfers were provided, thus suggesting that other evidence was shared concerning money transferred from HVA's account at PNC to the Vashishts' personal checking and savings account at PNC. Since "PNC was privy to both types of bank records (the TCI- HVA checks and the HVA-Harshi payments)," this Court held it was "plausible" that PNC had disclosed that information to RBCCM. See ECF Document 30.

90.     The reason RBC pled in paragraph 29 of the Draft Complaint that funds deposited into HVA's account at PNC were "for the mutual benefit of the Vashishts" is that, in fact, HVA transferred funds to the Vashishts' personal savings and checking accounts from time-to-time.

Second Am. Compl. ¶¶ 88-90, plainly fail to support these conclusory claims and do not rise above the speculative level.[7] Thus, the Court need not reach the actual contractual language Plaintiffs refer to, as the Court finds there are no facts in the record supporting the contention that Plaintiffs' personal banking account information was shared. None of the information outlined in paragraphs 23 or 29 of the Draft Complaint refers to transactions involving their personal accounts. Instead, all of the banking information pertains to: (1) checks written by Harshi, from HVA's business account; (2) checks written by TCI that were deposited into HVA's business account; and (3) checks written by Harshi from HVA's business account to pay off Vishal's RBC line of credit or credit cards. That Plaintiffs suspect PNC may have also shared their personal banking information cannot substantiate Plaintiffs' entitlement to relief for breach of contract. Here, Plaintiffs impermissibly allege legal conclusions instead of factual allegations.

---

[7] The Court notes that to the extent Plaintiffs are attempting to refer to the Court's March 8, 2018 Opinion and Order [ECF No. 30] in paragraph 89 of their Second Amended Complaint—and any findings therein— at the time this Opinion was filed, the Court did not possess or review a copy of the relevant excerpts from the Draft Complaint. Moreover, to the extent the Court found it plausible that PNC had disclosed private banking information to CM LLC, this finding made no mention of Harshi's and Vishal's personal accounts.

Accordingly, this Court will dismiss Count IX against PNC for the failure to state a claim upon which relief may be granted.

    **d.** **PLAINTIFFS HAVE NOT PLEAD A VALID CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT X)**

All express or implied contracts in New Jersey have an implied covenant of good faith and fair dealing, and parties to such contracts must "refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224-25 (2005) (internal quotations omitted). Breach of implied covenant arises when a party has acted consistently with the contract's literal terms, but has done so in such a manner as to "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" Wade v. Kessler Inst., 172 N.J. 327, 340 (2002) (quoting Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 129 (1976)). However, "where a claim for breach of the implied covenant of good faith and fair dealing is premised upon the same conduct as a breach of contract claim, the claim cannot stand and must be dismissed as duplicative or redundant." MZL Capital Holdings, Inc. v. TD Bank, N.A., No. 14-5772 (RMB/AMD), 2016 U.S. Dist. LEXIS 103177, at *30 (D.N.J. Aug. 5, 2016) (citations omitted).

Count X asserts a claim for breach of the implied covenant of good faith and fair dealing in connection with the conduct alleged in Count IX. Plaintiffs' implied covenant of good faith and fair dealing claim is premised upon the exact same conduct as their breach of contract claim, based on the Personal Account Agreement and associated Privacy Notice. Second Am. Compl. at 35-36. Plaintiffs' factual allegations do not go beyond those required to plead breach of contract, and Plaintiffs may not bring a claim for breach of good faith and fair dealing using only the same speculative and underlying facts that they allege in their breach of contract claim. Simply put,

Plaintiffs have not alleged any unlawful conduct or bad faith by Defendant that is distinct from the alleged contract breach. This claim is thus duplicative of the breach of contract claim and will be dismissed. The Court notes that even if it were not duplicative, Plaintiffs' breach of the implied covenant claim is wholly unsupported, as Plaintiffs have failed to establish that any personal banking information was shared and instead rely on merely speculative and conclusory allegations. Accordingly, this Court will grant Defendant's motion and dismiss with prejudice the claim for breach of the implied covenant of good faith and fair dealing (Count X).

### e. PLAINTIFFS HAVE NOT PLEAD A VALID CLAIM FOR CIVIL CONSPIRACY (COUNT II).

PNC contends that Count II, for civil conspiracy, should be dismissed because Plaintiffs have not alleged facts that support a claim for civil conspiracy. The Court agrees.

"In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 179 (2005) (quoting Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993), certif. denied, 135 N.J. 468 (1994)). Most importantly, the gist of a civil conspiracy claim under New Jersey law is "not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." Am. Corp. Soc. v. Valley Forge Ins. Co., 424 F. App'x 86, 90 (3d Cir. 2011) (quoting Banco Popular, 184 N.J. at 178).

Here, Plaintiffs' civil conspiracy claim must be dismissed because the Second Amended Complaint and Supplemental Complaint fail to state a cognizable claim for any underlying wrongdoing by PNC. As such, this Court grants Defendant's motion to dismiss the civil conspiracy cause of action under Rule 12(b)(6).

**V.    CONCLUSION**

For the foregoing reasons, this Court grants PNC's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing with prejudice Plaintiffs' Second Amended Complaint and Supplemental Complaint against PNC in their entirety. Dismissal is with prejudice, because Plaintiffs' pleadings, as highlighted by the discussion above, and the fact that this is Plaintiffs' second substantive attempt at pleading their Complaint, demonstrate that further amendment of the Complaint would be futile. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). An appropriate form of order will be filed together with this Opinion.


         s/ Stanley R. Chesler
         STANLEY R. CHESLER
         United States District Judge


Dated: May 20, 2019